W. H. BEACH, Appellant, v. THOMAS LYNN, LEE S. PARISH, PHILLIP SIMPSON PARISH, and LEE S. PARISH, Administratrix of Estate of LAFAYETTE H. PARISH.

Division One, June 8, 1923.

1. **PLEADING**: Answer of Guardian: Suit to Quiet Title. The usual answer of the guardian *ad litem* for the minor, in which he alleges that he "has no knowledge or information sufficient to form a belief as to the facts stated in plaintiff's petition and re-

quests that strict proof be made thereof," is sufficient to invoke the protecting arm of equity in behalf of the minor in the equitable suit to ascertain and determine the title.

2. **FRAUD: Straw Man: Notice to Subsequent Grantee: Actual or Constructive.** Deceased, having purchased and paid for land, had the conveyance made to a straw man in his office, On the day he died, this straw man conveyed the land to another straw man in the office of deceased, dating the deed back ten days, and making the deed on the representation that the grantee and deceased wished to close up a deal previously made for its sale. Thereafter this grantee conveyed to other straw men and the title passed by *mesne* conveyances through other straw men to plaintiff, all well known to him to be such, but there had previously been filed and placed of record an affidavit of deceased's wife in which it was stated that the equitable title was in her husband at the time of his death and that she had dower therein, and there was evidence from which the trial court could have found that the abstract of the title was in the hands of plaintiff when he received his deed and that it showed the filing and recording of this affidavit. *Held,* that the plaintiff was not an innocent purchaser, and that his deed should be set aside, and the title vested in the children of said deceased, subject to his widow's dower therein.

3. ———: **Innocent Purchaser: Notice: Lis Pendens: Abstract of Title.** One cannot be an innocent purchaser if he has personal knowledge of facts which would put a prudent man upon inquiry. If by due constructive notice, or by actual notice, the proposed purchaser of land is advised of a state of facts which would put a prudent man upon inquiry as to the title he is about to purchase, he is not an innocent purchaser, but must make the inquiry suggested by such facts. An abstract of title in the hands of a prospective purchaser from a straw man, who had purchased from other straw men, all well known to him to be such, showing that an affidavit had been filed and recorded in which the affiant stated that the equitable title to the land was in her husband at the time of his death and that she had dower therein, was sufficient to put him on inquiry, where such inquiry would have revealed the fact that said husband at the time of his death was the equitable owner, and that a deed from his grantor would be a fraud.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*L. D. Tolle* for appellant.

(1) By admitting in the answers that title stood in appellant by mesne deeds from a common source and then alleging that appellant's title was acquired with knowledge and notice of the rights of respondents, they affirmatively asserted a fact of the issue between the parties, and placed the burden of proving that fact upon these respondents. The burden of proving a fact is on him who asserts it affirmatively. Glover v. Henderson, 120 Mo. 367. Respondents entirely failed to show that this appellant at the time he purchased the land and paid for same had any notice, either actual or constructive, or knowledge of any right, title or interest which the respondents, or any of them, might have had in the land in question, and fails to show that appellant was not an innocent purchaser for value. (2) The allegations of the answers amounted to a charge of fraud between Simmons and Hartman and was an affirmative fact to prove which they had the burden, and upon such proof the judgment of the court would in effect have set aside the conveyance to this appellant, but that could only have done upon the additional proof that this appellant at the time of purchase of the land in question had actual or constructive notice or knowledge of such fraud. "If grantee had no knowledge of his fraudulent purposes and acts, and paid a valuable consideration for the land, the deed cannot be set aside." Bank v. Worthington, 145 Mo. 91.

*Davis & Woodruff* for respondents.

(1) The appeal should be dismissed because of the failure of appellant to present in his brief a "fair and concise statement of the facts," and "a statement in numerical order of the points relied on." Sec. 1511, R. S. 1919; Rule 15 of Supreme Court; Royal v. West. Ry. Co., 190 S. W. 573; Redmonvowh v. National Life Ins. Co., 204 S. W. 586. (2) The trial court was right in

finding that appellant was not a purchaser of this land for value, without knowledge or notice of the outstanding equities of the Parish estate. 39 Cyc. 1703; 39 Cyc. 1734; Musick v. Barney, 49 Mo. 458; Fellows v. Wise, 55 Mo. 413; Sensenderfer v. Kemp, 83 Mo. 581; Taaffe v. Kelly, 110 Mo. 127; Abbey v. Justice, 60 Mo. App. 300; Connecticut Mutual Life Ins. Co. v. Smith, 117 Mo. 261; Shaffer v. Detie, 191 Mo. 377; Stuart v. Ramsey, 196 Mo. 404; Adams v. Gossom, 228 Mo. 566; Helman Bank v. Looney, 271 Mo. 545; Walter v. Hartwig, 106 Ind. 123; Walfort v. Blount, 3 Haywood (Tenn.) 147, 9 Am. Dec. 736.

GRAVES, P. J.—Action to quiet title. The petition is in an ordinary form for such a case, and involves eighty acres of land in Saline County. Defendant Lynn, although personally served, filed no answer, and as to him judgment was by default. Lee S. Parish, the widow of one Lafayette H. Parish (called L. H. Parish), filed answer in which she alleged that this land was acquired by her husband (now deceased) during their married life, and that she was entitled to a dower interest therein. She avers that her said husband, upon the acquisition of the land, caused the bare legal title to be placed in the name of one F. B. Simmons, and that the said Simmons claimed no actual or beneficial right, title or interest therein, but held the legal title thereto to the use and benefit of the said Lafayette H. Parish. The answer then further proceeds in this language:

"The said Lafayette H. Parish died on October 31, 1918. On November 1, 1918, a warranty deed conveying the legal title of said real estate from F. B. Simmons to one W. F. Hartman was filed for record in the office of the Recorder of Deeds of Saline County, Missouri, said deed being recorded in said office in Book 167, at page 374. The said W. F. Hartman did not pay any consideration for the conveyance to him of said legal title, and the said W. F. Hartman took and received title to said real estate with knowledge and notice that the said F.

B. Simmons was seized of and held the legal title thereto to the use and benefit of said Lafayette H. Parish. The plaintiff herein has received and holds the legal title to said real estate through mense conveyances from said W. F. Hartman without consideration, and with the knowledge and notice that the said F. B. Simmons and W. F. Hartman held and were seized of only the legal title to said real estate, to the use and benefit aforesaid.

"The said Lafayette H. Parish acquired and became the owner of the actual and beneficial right, title and interest in and to said real estate, and the said F. B. Simmons became seized of the legal title thereto, to the use and benefit of said Lafayette H. Parish, during the marriage between the said Lafayette H. Parish and this defendant, and this defendant has never conveyed or relinquished her right of dower in said real estate and now has and is entitled to her dower therein.

"Wherefore, the defendant prays the court to find and decree that she has and is entitled to her dower in said real estate as the widow of the said Lafayette H. Parish, deceased, and that the court hear and determine any and all rights, claims, interests, liens and demands whatsoever of the parties or of one of them concerning or affecting said real estate and award full and complete relief, whether legal or equitable, to the parties hereto, and to each of them as fully and with the same force and effect as the court might or could do in any other or different action brought by the parties or any one of them to enforce any such right, claim, interest or lien or demand, and that the court award this defendant such other and further relief as to the court may seem meet and just, and that she have judgment for her costs herein."

The widow as the administratrix of her husband's estate filed an answer, by which the same issues, among others, were raised.

Defendant Philip Simpson Parish, through William T. Bellamy, guardian *ad litem,* filed the usual answer.

Replies placed all new matters in the answer in issue. The trial court entered of record the following findings of fact and judgment:

"Now on this 31st day of May, 1921, this cause came on regularly for trial and hearing. Came the plaintiff in person and by counsel, and came Lee S. Parish in person and by counsel, and Lee S. Parish, administratrix of the estate of Lafayette S. Parish, deceased, in person and by counsel, and came defendant Phillip Simpson Parish by his guardian *ad 'item*, William T. Bellamy, and defendant Thomas Lynn, though duly and regularly summoned and called, came not but made default; and the court having read and considered the pleadings and having heard the evidence, took this cause under advisement.

"Now on this day the court, having fully considered this case, and being fully advised in the premises, finds that the defendant Thomas Lynn has no right, title, interest, lien or claim in or to the real estate described in the plaintiff's petition and hereinafter described; that plaintiff has acquired and holds the promissory note described in and attempted to be secured by a certain deed of trust dated February 18, 1919, executed by William A. Fennell to C. C. Northcott of Macon County, Missouri, trustee for George M. Clark, said deed of trust being filed for record in the office of the Recorder of Deeds of Saline County, Missouri, February 20, 1919, and recorded in said office in Book 165, at pages 555 and 557, and finds that no lien upon said real estate was ever created by said deed of trust, and that said real estate is not subject to any lien, charge or encumbrance whatsoever because of said deed of trust.

"The court further finds that by warranty deed, dated December 22, 1917, filed for record in the office of the Recorder of Deeds of Saline County, Missouri, January 3, 1918, and recorded in said office in Book 167, at page 198, the real estate hereinafter described was conveyed by L. M. Kilburn and Myrtle Kilburn to F. B. Simmons; that said F. B. Simmons by said deed acquired only the bare legal title to said real estate, and never

did have and never did claim to be the owner of the equitable, actual and beneficial interest, right and title in and to said real estate, but held the bare legal title to the same for the use and benefit of Lafayette H. Parish; that said Lafayette H. Parish died on October 31, 1918, being then the owner of and seized of the whole of the equitable and beneficial title, estate and interest in and to said real estate, and not having authorized or directed said F. B. Simmons to make conveyance of said real estate, and that the warranty deed dated October 21, 1918, filed for record in said Recorder's office November 1, 1918, and recorded in said office in Book 167, at page 374, executed by said F. B. Simmons and E. May Simmons, his wife, as grantors, to W. F. Hartman, grantee, conveyed only the bare legal title to said real estate; that said W. F. Hartman took said conveyance with full knowledge and notice that said F. B. Simmons held only the bare legal title to said real estate for the use and benefit of said Lafayette H. Parish, aforesaid; and the court finds that plaintiff W. H. Beach took and holds only the bare legal title to said real estate through mesne conveyances from said W. F. Hartman, with full knowledge and notice that said F. B. Simmons held only the bare legal title to said real estate for the use and benefit of said Lafayette H. Parish, as aforesaid; and finds that none of the grantees claiming through said W. F. Hartman are or were bona-fide purchasers of said real estate without notice, but all were and are chargeable with notice and knowledge of the true ownership of said real estate, as aforesaid.

"The court further finds that defendant Lee S. Parish is the widow of Lafayette H. Parish, deceased, who was seized of the equitable title to said real estate during their marriage, and that she has not relinquished her right of dower in and to said real estate, and that she is now entitled to and possessed of her dower as such widow in and to said real estate.

"The court further finds that said Lafayette H. Parish left surviving him as his only heir defendant

Phillip Simpson Parish, who was duly and legally adopted by said Lafayette H. Parish as his son, and that said defendant is entitled to inherit from said Lafayette H. Parish, as his son, duly and legally adopted by law; and the court finds that defendant Lee S. Parish, administratrix of the estate of Lafayette H. Parish, deceased, is the duly appointed, qualified and acting administratrix of the estate of Lafayette H. Parish, deceased, under appointment by the Probate Court of Jackson County, Missouri, at Kansas City; that she has heretofore taken possession of the real estate hereinafter described as such administratrix under proper order of said probate court, and that the right, title and interest of defendant Phillip Simpson Parish in and to said real estate is subject to such debts of Lafayette H. Parish, deceased, as have been properly proved and allowed against his estate as required by law.

"The court finds all the issues herein against the plaintiff, against the defendant Thomas Lynn, and in favor of defendants Lee S. Parish, Phillip Simpson Parish and Lee S. Parish, administratrix of the estate of Lafayette H. Parish, deceased.

"Wherefore, it is ordered, adjudged and decreed by the court that defendant Thomas Lynn has no right, title, interest, lien or claim of any kind whatsoever in, to or upon the real estate hereinafter described; that plaintiff W. H. Beach held and holds only the bare legal title to said real estate as aforesaid, for the use and benefit of Lee S. Parish, widow of Lafayette H. Parish, deceased, and Phillip Simpson Parish, the only heir of said Lafayette H. Parish, deceased, subject to the debts of said Lafayette H. Parish, deceased, aforesaid; and the court now by this judgment, order and decree hereby divests said W. H. Beach of said bare legal title, and adjudges and decrees that defendant Lee S. Parish, widow of Lafayette H. Parish, deceased, is now entitled to and possessed of her dower as such widow in and to said real estate, and that defendant Phillip Simpson Parish is entitled to, and is the owner of the absolute fee simple,

legal and equitable title in and to said real estate, subject to the dower of said Lee S. Parish therein, and the court by this judgment, order and decree vests in said Phillip Simpson Parish the absolute fee simple title, legal and equitable in and to said real estate described as follows, to-wit: The west one-half of the southwest quarter of Section 24, Township 53, Range 21, Saline County, Missouri, subject, however, to the dower of said Lee S. Parish, and subject to the rights of creditors of said Lafayette H. Parish, deceased, whose claims have been proved and allowed against his estate as provided by law; and the court further orders, adjudges and decrees that no lien upon said real estate was ever created by the deed of trust hereinbefore described and that said real estate is not subject to any lien, charge or encumbrance whatsoever because of said deed of trust.

"The court further orders, adjudges and decrees that defendants Lee S. Parish and Lee S. Parish, administratrix of the estate of Lafayette H. Parish, and Phillip Simpson Parish have and recover of and from plaintiff the costs of this action."

From this judgment the plaintiff appealed. The pertinent evidence will be noted in its proper connection in the opinion.

I. Point is made that the minor defendant, who appeared by guardian *ad litem* only filed the usual answer, and did not set up the facts in defense, as did the adult defendant, and that the deeds having made a prima-facie case for plaintiff, the judgment in favor of the minor is error.

*Pleading by Minor.*

It is true that the guardian *ad litem* filed only the usual answer for the minor in which it is averred that the said guardian *ad litem* "has no knowledge or information sufficient to form a belief as to the facts stated in plaintiff's petition, and requests that strict proof be made thereof." But it is further true that the answer of the adult defendant is asking for the establishment of an equitable title, in that the equitable title

was always in Lafayctte H. Parish, and this placed the
case upon the equity side of the court. Minors are the
special wards of equity, and where their interests are
involved the court looks with an averted eye to such con-
tentions as is here made. This answer of the guardian
*ad litem* was sufficient to invoke the protecting arm of
equity in the interest of this ward. It would be exceed-
ingly averse to the general idea of the status of a minor
before a court of equity to say that the usual answer in
such cases would not suffice for the full administration
of justice as to the minor. The point is without merit.

II. We need not waste space upon the contention of
appellant upon the proposition that it devolved upon
Burden.    the defendants to show that plaintiff was not
an innocent purchaser for value. Defendants
concede this to be the rule of law, and contend that, al-
though the burden was cast upon them, they have carried
the burden successfully, and for that reason the judg-
ment *nisi* should not be disturbed here. Whether or not
they carried this burden is the sole question in the case.
Of the facts next.

III. The rule mentioned, supra, is applicable on
account of the facts, which we are now going to state.
In the first place the record title to the land involved
was never in deceased, Lafayctte H. Parish. In De-
cember, 1917, the deceased purchased from A. R. Kil-
burn, the legal title being in his father, L. M.
Fraud:    Kilburn, some 400 acres of land in Saline
Innocent
Purchaser.    County, of which the land in question was a
part. At the suggestion of deceased, the deed
was made by L. M. Kilburn, father of A. R. Kilburn, to
F. B. Simmons, an acquaintance of deceased, and who was
used by deceased in his real estate business as a "straw
man." Up to this point there is absolutely no question
about the situation. Simmons never claimed a beneficial
interest in the land. He held the bare legal title for the
use and benefit of deceased. Through deceased the land

was all sold except that here involved.  It is clear that the agent of deceased sold 320 acres for him to St. Louis parties, and that deceased received the full benefits of such sale.  At the time deceased was running a real estate business in Kansas City, the plaintiff was likewise engaged in said city.  He, too, had his "straw man."  The Kilburn deed was a warranty deed, but, as said, was made to Simmons as the "straw man" for deceased.  Later, in the line of title, special warranty deeds appear.

Deceased paid for the 400 acres of land.  The relation of Simmons to this title is not seriously in dispute.  Parish contracted personally for the sale of the 320 acres which was sold, as above stated, and had the 80 acres listed for sale with agents in Saline County.  One of these agents had negotiated a sale of the 80 acres here involved to A. M. Robinson, but before the deal could be closed Parish died.  From this point things moved rapidly as will be seen.

Simmons knew one W. F. Hartman, who was a salesman in Parish's office.  As late as October 21st, Parish was in his office in Kansas City, but between three and four o'clock p. m. of October 31st he died at the home of his wife's father, in Holden, Missouri, after a very brief illness.  On the very day of his death, Hartman, who knew the situation, went to Simmons, and on the excuse that they wanted to close up a deal for this land, got Simmons and wife to make the deed to Hartman.  The deed shows that it was not executed by Simmons until October 31, 1918, although the scrivener dated the instrument October 21st.  This was of a date when Parish is said to have been in Kansas City, and this is of some significance in the fraud which was perpetrated by Hartman.  This man was at Holden on the day before Parish died, but Parish could not be talked to at that time.  On the next day, the day of the death, the deed was acknowledged by Simmons, but the date of October 21st is attempted to be explained by an alleged sale by Parish to Hartman on that date, which is shown by one

Anderson, another salesman in Parish's office. It is said that Parish owed Hartman six to seven thousand dollars, and that on this day the usual roll of bills (in this instance $1000 in bills) was present upon a table, and Parish is quoted as saying that he had sold this land to Hartman. These alleged cash payments are frequently suspicious. Yet on the 23rd of October Hartman writes to Parish from Slater, Missouri. In the letter he says: "Arrived at Slater last night about 10 O. C. and been in town all day didn't get to see Mr. Gwinn he—at left for south Missouri yesterday morning and won't be back till Friday evening will get to see him then that is if the gets back."

Bear in mind that Gwinn was agent for Parish for the sale of this land. He had negotiated a sale to Robinson. If Hartman had in fact bought the land on the 21st, as he says, then there was no reason for him writing to Parish anything about Gwinn. The agency of Gwinn only extended to this land, and if Hartman was telling the truth, or Anderson was telling the truth, there was no earthly reason for Hartman to mention Gwinn in his letter to Parish on the 23rd. One engaged in perpetrating a fraud should have good memory as to what has gone before.

The deed to Hartman was signed and acknowledged by Simmons on October 31st, whilst Parish was dying. On November 1st it was filed for record by Hartman, and on November 2nd, Hartman deeds to Henry Treece, which deed was filed for record on December 24, 1918, although acknowledged on November 2nd, the date of its making. Here was hurried effort to get title out of Hartman. Yet, Mr. Gwinn says that on November 26th Hartman sent a deed to the bank, which was to be delivered to Robinson, when Robinson paid for it. Treece was admitted to be a mere straw man for Hartman. He never had any real interest in the land. There was a previous deed from Simmons to Thomas Lynn, defendant herein. This deed was dated June 1, 1918, and filed

for record November 5, 1918. This deed was during the lifetime of Parish, yet Lynn asserts no title, but lets judgment go by default. Hartman was in Saline County on November 5, 1918, but as to who filed the Lynn deed does not appear.

Another side line is found in the fact that on November 18, 1918, Mrs. Parish filed and had placed of record an affidavit in which it was asserted that the equitable title to this land was in L. M. Parish when he died, and that she had dower therein. As stated above Hartman deeded to his admitted straw man, Treece. This deed was not filed for record until December 24th, and the records in the Recorder's office show that they were directed to mail this particular deed to the Leslie Land Company, 311 Ridge Building, Kansas City, Missouri. Beach, the plaintiff, was the "Leslie Land Company," and his office the headquarters of Hartman after the death of Parish. Anderson, who worked for Parish, and who is a star witness herein, transferred himself to Beach's office, and worked for Beach, after Parish's death.

Later, in February, 1919, Hartman was at Ottumwa, Iowa, and traded this land to one Clark, and had Treece, Hartman's "straw man," deed it to Finnell, Clark's "straw man." Beach was there at this time, as admitted by Hartman. At the time of the alleged trade in Iowa, Finnell, Clark's "straw man" who held the equitable title for Clark, made a deed of trust to C. C. Northcott, as trustee to secure to the said Clark $3,000, and singularly enough this note turns up in the hands of Beach, the plaintiff, who chanced to be in Iowa at the time.

Shortly after the affidavit of Mrs. Parish, supra, was filed, Hartman was in Saline County trying to close the trade with Robinson. The affidavit was discovered, and the deal failed. Hartman knew of the affidavit. In the Iowa trade there was present an abstract of title, or there is evidence from which a court could well find that fact. Although contradictory there is also evidence from

which the learned chancellor could well find that this affidavit was mentioned in the abstract, and its actual existence known to Hartman and all these succeeding "straw men," and parties connected therewith. In fact there are indications that all the parties subsequent to Hartman were mere tools of Hartman to carry out the steal he made or attempted to make, on the day Parish died.

If this affidavit and its purport was set out in the abstract, which the trial court could well find, and, if the parties to the subsequent transactions saw such abstract, and thus acquired actual notice of the affidavit, then none of them were innocent purchasers. [Hellman Commercial Trust & Savings Bank v. Loney, 271 Mo. 545, l. c. 553-554, bottom and top of these pages respectively; Musick v. Barney, 49 Mo. 458; Conn. Mutual Life Ins. Co. v. Smith, 117 Mo. l. c. 292; Adams v. Gossom, 228 Mo. 566; Stuart v. Ramsey, 196 Mo. 404; Sensenderfer v. Kemp, 83 Mo. l. c. 588.]

In the latter case BLACK, J., quoting from the 40 Mo. said:

"There was surely enough to put a prudent person upon inquiry. Notice 'is actual when the purchaser either knows of the existence of the adverse claim of title or is conscious of having the means of knowledge although he may not use them.' [Speck v. Riggin, 40 Mo. 405.]"

One cannot be an innocent purchaser if he had personal knowledge of facts which would place a prudent man upon inquiry. If by due constructive notice, or by actual notice, the proposed purchaser of property is advised of a state of facts which would place a prudent person upon inquiry as to the title he is about to purchase, such person is not an innocent purchaser. He must make the inquiry suggested by the facts of which he had personal knowledge. These subsequent parties had knowledge of facts sufficient to put them upon inquiry, if this abstract contained a mention of the Lee

Parish affidavit and its contents. The trial court could well find the facts, as we have indicated. The learned judge *nisi* reached a righteous judgment, and it is affirmed. All concur.