UNITED CEMETERIES COMPANY v. JOHN D. STROTHER ET AL., LOUIS A. HARBIN, Appellant.—61 S. W. (2d) 907.

Court en Banc, June 10, 1933.

*John D. Strother, Duvaul P. Strother* and *Gossett, Ellis, Dietrich & Tyler* for appellant.

*Borders, Borders & Warrick* for respondents.

HAYS, J.—This appeal was first heard in Division Number One, where separate and divergent opinions were prepared by Commissioners HYDE and STURGIS. Neither opinion being adopted, the cause was on motion of the members of that division transferred to Court en Banc and has here been reargued and submitted.

Upon this final consideration of the case we adopt as the opinion of the court the opinion referred to as prepared by Commissioner STURGIS, which is as follows:

"No question is made on this appeal as to the consolidation of the two cases mentioned in the caption—one having for its object the enjoining of the foreclosure of a deed of trust on the twenty-three acres of land conveyed and platted as a cemetery by the United Cemeteries Company, and the other having for its object the appointment of a receiver of such Cemeteries Company to take charge of and sell its assets and distribute the proceeds. The latter suit is by a general creditor and the ground of the receivership is frozen assets. The court appointed a receiver, apparently by consent of the defendant Cemeteries Company, and he is and has been in charge of its affairs, selling burial lots and collecting for same and for others previously sold on installments. The receivership has proceeded along lines prescribed for business receiverships. The suit by the Cemeteries Company to enjoin the sale under the deed of trust was commenced September 6, 1927, and a temporary restraining order was granted September 7, 1927. The Cemeteries Company apparently acted without counsel. Three days later, September 10, 1927, the suit to have a receiver appointed for the Cemeteries Company was filed by the Schooley Stationery Company on a debt of $245.55, alleging that the defendant Cemeteries Company has assets amounting to $70,000, is indebted to creditors in the sum of $20,000, and asks for a receiver to take charge of and preserve the assets and 'keep the defendant's business in operation as a going concern,' and to operate the business under the order of the court. On that same day the defendant Cemeteries Company, acting without any attorney, filed its answer, a general denial. The court appointed a receiver on the same day, apparently without a hearing, or at least by consent.

"Before the two suits were consolidated Louis A. Harbin, appellant here, who owns the note secured by the deed of trust, and a defendant in the injunction case, filed an answer and cross-petition in that case, and also intervened by leave of court and filed an answer and cross-petition in the receivership case. In these cross-petitions he sets up the execution of the deed of trust to secure his note for $17,400 executed by a former owner of this twenty-three acres of land, and who conveyed same to the Cemeteries Company subject to such deed of trust; that the secured note is due and unpaid; recites that less than one-tenth of the burial lots have been sold; that the Cemeteries Company is a purely business corporation organized as such and operating the cemetery and selling lots purely for profit; that the receivership had not been a success and was hardly paying expenses of operation. He asks that 'said real estate and the equity of redemption therein, except that portion of said real estate released from the lien of said deed of trust as aforesaid, be sold by the sheriff or receiver herein *as and for a cemetery,* and for cemetery purposes, and in such manner as the court may find will best serve the rights and interests of all persons interested therein, and that the proceeds of said sale be applied first to the payment of costs of foreclosure, and next to the payment of the principal and interest of this claimant's said note, and then to the payment of such claims as may be allowed by the court against the said Cemeteries Company, and that said receivership be terminated and said receiver discharged.'

"The receiver appointed in the suit brought for that purpose also filed in the receivership case a petition to sell all the assets of the Cemeteries Company under such terms and conditions as the court may fix *so as to protect those who have purchased lots and grave spaces in the cemetery.*

"The two cases were then consolidated and heard together. The final judgment and decree of the court made permanent the injunction against selling the land under the power of sale in the deed of trust, but ordered a sale of all assets of the Cemeteries Company by a special commissioner appointed for that purpose. Such decree provides that the purchaser at such sale shall take said lands subject to the rights, estates and interests of the present owners as purchasers of grave spaces and lots, and 'it is further ordered, adjudged and decreed that the purchaser at said foreclosure sale, when and if approved by this court, shall thereby, as part of and with the property sold, acquire and have, and there shall be delivered to him by the receiver, all and singular the corporate seal, books, records, papers, documents, maps and plats, and shall assign and transfer all notes, bills, accounts and contracts belonging to said Cemeteries Company, and any and all books and papers of the United Cemeteries Company

showing or relating to the sale by it aforesaid of lots and grave spaces in said Blue Ridge Lawn Cemetery,' and that the purchaser shall make payment of the purchase price 'on execution and delivery of the special commissioner's deed conveying said land as in accordance herewith.' There are other provisions safeguarding the graves and the grave lots sold or contracted for and preserving the integrity of this cemetery as such and perpetuating its use as such.

"No one is complaining on this appeal of the part of the decree ordering a sale of the land as a cemetery. The Cemeteries Company, which platted and dedicated the land to cemetery purposes and which owns the same as a cemetery, does not appeal, though it brought the suit to enjoin the sale under the deed of trust. The only appellant is Louis A. Harbin, the owner of the note secured by the deed of trust, and he does not seriously object to or complain of the decree in ordering the sale of the cemetery land but only to the order of distribution of the proceeds. The trial court ordered a distribution of the proceeds by paying first the costs and expenses of the suits, including the receivership, and next to pay pro rata all allowed claims (itemized to the amount of $33,438.44), inclusive of the amount due appellant, Louis A. Harbin, $16,800. These were amounts allowed by the receiver as shown in his report to the court and includes the amount sued for in the receivership case. Presumably the other items, twelve in number, were owing to general creditors of the Cemeteries Association, and the decree recites that they are not in dispute as 'claims due and unpaid by the Cemeteries Association which have been filed and allowed in this court.' Under the terms of this decree, appellant, Louis A. Harbin, is accorded no rights or preferences whatever by reason of being the holder of the note and deed of trust on the lands constituting the cemetery, but is relegated to the position and rights of a general creditor of the Cemeteries Company and no more. Unless appellant, Louis A. Harbin, has some rights growing out of his deed of trust, there is no apparent reason why his note should be allowed as a general claim against the Cemeteries Company. It is not a direct obligation of that company and is no obligation of that company at all unless by reason of some lien on the land or obligation growing out of the purchase by such company of the land, which is platted as a cemetery, subject to Harbin's deed of trust. The parties to this litigation, other than Louis A. Harbin, have not appealed and they are here asking that the decree of the court ordering the land sold as a cemetery be affirmed. The appellant, Louis A. Harbin, is asking for a sale of the cemetery land either under his deed of trust or by a commissioner appointed for that purpose, and makes it clear that his chief complaint is the denial of a preference to him in the distribution of the proceeds.

■■ "It may be conceded, therefore, that when Louis A. Harbin joined in or consented to the platting of the land on which he held a deed of trust as a cemetery, he assented to and helped create a condition which rendered void the power of sale in the deed of trust. When this land was thus dedicated to burial purposes, such a public use was fastened on same that it became different from other land and was no longer subject to unrestricted sale for commercial purposes. In any sale made its use and identity as a cemetery and home of the dead must be respected and preserved. The purchaser must buy a cemetery with its restrictions and limitations. The owners of burial lots and friends and relatives of the buried dead, and to an extent the public, having interests to be protected. So the authorities hold. [Allison v. Cemetery Caretaking Co., 283 Mo. 424, 223 S. W. 41; Spear v. Locust Wood Cemetery Co. (N. J. Eq.), 66 Atl. 1068; Wolford v. Crystal Lake Cemetery Assn. (Minn.), 56 N. W. 56; Brown v. Maplewood Cemetery Assn. (Minn.), 89 N. W. 872; Fidelity Union Trust Co. v. Union Cemetery Assn. (N. J. Eq.), 145 Atl. 537; Peterson v. Stolz (Tex.), 269 S. W. 113; 11 C. J. 58, sec. 19.] Once a cemetery, always a cemetery, is not quite true, but nearly so. [Tracy v. Bittle, 213 Mo. 302, 112 S. W. 45.]

"These considerations furnish the reason for a judicial sale under the sanction and conditions imposed by the court rather than an unrestricted sale under the power contained in the deed of trust. To this end are our statutes exempting cemetery lands from taxes and protecting same from sales under attachment and execution, or being subject to a compulsatory partition. ■ The owner of a cemetery has a perfect right to sell and convey the same as a cemetery to another person or company for that purpose. It is said in Allison v. Cemetery Company, 283 Mo. 424, 430: 'We are of the opinion that Section 1307, Revised Statutes 1909, does not prohibit the voluntary sale of property belonging to a cemetery association to another association of the same kind and maintained for the same purpose.' It is further said in that case: 'If the deed of trust aforesaid should be sustained as a first lien on the property in controversy, a foreclosure of same would either cast a cloud upon the rights of those whose friends and relatives are buried on said land, or would result in diverting said property from its original public use as a burying ground and converting the same into a commercial asset.' Such is the reason given for not permitting a sale of land platted and used as a cemetery under the power given in a deed of trust. It is also held in that case that the particular deed of trust in question was void because it was not given for the purpose of raising funds to improve or keep the cemetery in repair, but was given to secure bonds which were not to be so used. Deeds of trust given for a proper pur-

pose may, however, very properly be foreclosed by a court of equity when the necessity arises.

"There is no reason or authority for holding that the legal or equitable title to land is lost or destroyed by dedicating it to cemetery purposes. Though devoted and restricted to a particular use, the title remains as before. The only requirement in this State for establishing a cemetery is that the owner, whether a person, association or corporation, shall file and record a plat thereof. [Sec. 14052, R. S. 1929.] When this is done the land so platted is dedicated to the use of a cemetery, but the title is not destroyed. The statute plainly implies that cemeteries may be owned by individuals or by purely business corporations, as is the case here, and such cemeteries may be managed and conducted for profit. No burials may be made in such cemeteries except by permission and on terms fixed by the owner. Such owner may sell burial plots at a price fixed by himself and convey by deed the burial lots in fee simple, or he may refuse to sell. The statute, Section 14069, seems to contemplate this.

"The holder of a deed of trust on land has an interest in the land and there is no reason for holding that the platting and dedication of the land for cemetery use by his consent destroys that interest. It may destroy the power of sale given by such deed of trust, for a sale in that manner is unrestricted and, as said in the Allison case, supra, 'would cast a cloud on the rights of those whose friends and relatives are buried on said lots, or would result in diverting said property from its public use as a burying ground and converting same into a commercial asset.' The destruction of the power of sale in the deed of trust does not, however, destroy the holder's interest in or lien on the land. Nor is such interest in or lien on the land destroyed by its being dedicated to a particular use, as, in this instance, a burying ground. The deed of trust may be foreclosed in a court of equity where all rights growing out of burial can be protected, or it may become necessary to sell it at judicial sale for some other purpose, and in such case the rights of the mortgagee, as well as the rights of the public, should be protected. It is not unusual that the mortgage lien will follow and attach to the proceeds of land when sold for purposes other than to satisfy such lien, as, for instance, in partition sales or in sales to satisfy some other lien.

"That the proceeds of the sale of land platted or used as a cemetery may be applied on a mortgage on same, though not to be sold in the usual way of foreclosure, finds support in Fidelity Union Trust Co. v. Union Cemetery Assn., a New Jersey case, 139 Atl. 706, and same case, 145 Atl. 537. It seems that under the law of that state one-half the proceeds of the sale of burial lots must be used strictly for cemetery purposes and the owner gets the other half.

In this State the owner gets all of such proceeds. The above suit was to foreclose a mortgage on a cemetery. In the first case cited the court said: 'For the purchase price the promoter would be entitled to a vendor's lien, and there can be no valid objection that the lien finds expression in a mortgage, though no express authority to execute a mortgage may be found in the statute.' When this same case again came before the court in 145 Atl. 537, the court said: 'The mortgage under foreclosure was given for the purchase price of the cemetery. The conception of the legal effect of the mortgage as previously expressed is that the mortgage is merely evidence of the vendor's equitable lien upon one-half the proceeds of sales of burial plots, which half, the Cemetery Act provides, shall be set aside to pay the purchase price. The mortgage itself speaks the statutory scheme in this respect, in that it stipulates that the lands are to be used for cemetery purposes, to be subdivided into burial lots and plots for sale and to be severally released upon payment of half the sales price. Whatever it may contain of limitations, conditions and forfeitures, in conflict with the Cemetery Act, is *ultra vires*. A decree for the sum reported by the master will be advised, to be impressed as a lien and to be made out of one-half the proceeds of sales by the cemetery.' The court then distinguishes Spear v. Locust Wood Cemetery Co., 66 Atl. 1068, where it was held that a cemetery could not be sold on execution in ordinary foreclosure of a mortgage except such part as was not actually put in use as a cemetery, and then said: 'The latter illegal features excised, the mortgage is permitted to stand in lieu of the vendor's equitable lien upon the proceeds of sales of burial plots that would have been his by the statute had not the mortgage been made.'

■ "As this cemetery is to be sold as such in any event and the Cemeteries Company will lose all title and interest in same, we see no reason why appellant, as owner of this mortgage, should not be given a preference in the distribution of the proceeds over general creditors. Such general creditors were bound to take notice of this mortgage and dealt with the company on that basis, knowing that the appellant had an equitable, if not legal, first lien.

■ "We see no reason for ordering a separate sale of possible 'reversionary interest' of the Cemeteries Company in this land, the proceeds to be paid to appellant on his deed of trust, and then a sale, likely to a different purchaser, of the 'right to sell the platted lots to the public for burial purposes.' There should be no such separate ownership. The purely personal property of the association might be sold separately, but the installment notes given for the purchase price of burial lots doubtless call for deeds to the burial lots when paid, and such should be sold along with the cemetery **lands.**

"Nor do we believe this court or the trial court can impose on the purchaser of this cemetery land the duty or obligation to make improvements of the cemetery or provide for its future care or upkeep. No one here is asking, or has a right to ask, such relief. [Union Cemetery Assn. et al. v. Kansas City et al., 252 Mo. 466, 161 S. W. 261.] That is a matter for the Legislature and we have no statute in this State, as there is in other states, requiring owners of cemeteries to provide for the future care and upkeep of same in connection with the sale of burial lots. In this State, in the absence of a contract otherwise, it is left entirely to the owners of burial lots or the friends and relatives of the buried dead to make provision for improving and for the future care of the cemetery in general or of any particular grave plot. [Secs. 14059 and 14061, R. S. 1929.]

"In our judgment, the judgment and decree entered by the trial court is substantially correct, except that it should be so modified as to give the appellant, as owner of the note secured by the deed of trust, a preference over general creditors in the distribution of the proceeds of the sale."

The judgment is accordingly reversed and the cause remanded and the trial court is directed to enter a judgment and decree in accordance with the views hereinabove expressed. All concur.