HAROLD J. ABRAMS, as Trustee of the Estate of LAKEWOOD SECURITIES COMPANY, a Corporation, Bankrupt, Respondent-Appellant (Plaintiff), v, LAKEWOOD PARK CEMETERY ASSOCIATION, a Corporation, Respondent (Defendant), OREON E. SCOTT, Individually, and as Trustee Under Deed of Trust, etc., LOLAH F. STEED, SAM F. DOTY, FIRST NATIONAL BANK IN ST. LOUIS, a Corporation, UNITED CHRISTIAN MISSIONARY SOCIETY, a Corporation, et al., Appellants (Defendants).—No. 39363.—196 S. W. (2d) 278.

Court en Banc, July 8, 1946.

Rehearing Denied, September 9, 1946.

*Cobbs, Logan, Roos & Armstrong* for appellants Oreon E. Scott et al.; *Wm. H. Armstrong* and *Taylor Sandison* on the brief.

314

*Thomas S. McPheeters* for appellant First National Bank in St. Louis; *Bryan, Cave, McPheeters & McRoberts* of counsel.

*Alexander Ausmus & Harris* for appellant United Christian Missionary Society.

316

*Edward K. Schwartz* for respondent-appellant Harold J. Abrams as Trustee, etc.

318

*Ivon Lodge* for respondent Lakewood Park Cemetery Association.

319

BARRETT, C.—The Lakewood Securities Company's trustee in bankruptcy seeks to set aside and have declared void the foreclosure of a deed of trust and to cancel, as void, two deeds of trust subsequently executed by the purchaser at the foreclosure sale. The theory of the action is that the land had been dedicated to public cemetery purposes and, therefore, the power of sale contained in the deed of trust was void.

The respondent, Lakewood Securities Company, and its predecessor, Fairmont Securities Company, were ordinary business corporations whose chief purpose was the promotion and development of Lakewood Park Cemetery. The appellant-defendants are Oreon E. Scott, United Christian Missionary Society and the First National Bank in St. Louis. Scott became the holder of the principal note and deed of trust and caused it to be foreclosed. He, in the name of his employee, Lolah F. Steed, was the purchaser at the foreclosure sale. The First National Bank and the United Christian Missionary Society are the holders of the notes and deeds of trust executed by the purchaser at the foreclosure sale. The respondent-defendant, Lakewood Park Cemetery Association, is the organization representing cemetery lot owners.

The trial court found that with the knowledge and assent of the owners and holders of the principal note and deed of trust a part of the land had been dedicated to public cemetery purposes and, that that fact destroyed the power of sale in the deed of trust. Accordingly, the court set aside the foreclosure and cancelled the subsequent deeds of trust in so far as they covered that part of the land dedicated as a cemetery. The holder of the principal note, Oreon E. Scott, and the holders of the notes and deeds of trust subsequently executed by him (the First National Bank and the United Christian Missionary Society) appeal from that part of the decree cancelling the foreclosure and the subsequently executed deeds of trust. There is a cross-appeal by the trustee in bankruptcy from that part of the judgment which excluded from the decree of cancellation the tracts of land not dedicated to cemetery purposes. The theory of the cross-appeal is that all the land described in the principal deed of trust had been dedicated to cemetery purposes and, therefore, the court erred in excluding any part of it from the decree of cancellation.

The factual background of the litigation is this:

In 1920 John Mayer. of Kansas City owned 240 acres of land in St. Louis County, and the City of St. Louis. The area had been platted into blocks and lots by Kenneth MacKenzie. In February 1920 John Mayer, by warranty deed, conveyed the land to Thomas J. Crinnion. For the balance of the purchase price Crinnion gave Mayer notes totalling $117,819.00 secured by a deed of trust on the land. The deed of trust contained a power of sale to be exercised by the trustee or his successor in the event of failure to comply with the terms of the notes and deed of trust. The deed of trust also provided for partial releases of land from the terms of the deed of trust upon the payment of $1,000.00 an acre to the beneficiary.

In May 1920 Crinnion conveyed the land to Fairmont Securities Company, the predecessor of Lakewood Securities Company. The warranty deed expressly provided that the conveyance was "subject to a deed of trust now of record against the above described property." In February 1921 the Fairmont Securities Company caused an engineering firm to lay out and plat approximately 200 acres of the land as a cemetery. The plat was called "General Plan Lakewood Park Cemetery" and was filed in March 1921. The land was platted into thirty-three sections, with winding drives around the sections. A building on section thirty-three was designated as a chapel, another building on section seventeen was designated as a crematory and a building on section fourteen was designated as the superintendent's residence. Only the drives on the east portion of the plat were named. This plat did not subdivide any of the sections into burial lots. Though this "General Plan" was not platted and filed until March 1921, sections two and three had been previously platted and subdivided into burial lots and the plats had been filed in November 1920.

In 1921 and 1922 detailed plats subdividing sections four, five and seven into burial lots were filed. In November 1920 Mayer released "Section Two (2) of Lakewood Park Cemetery" from the deed of trust upon the payment of $7,150.00. In 1921 he released sections three and four, in 1922 he released section five and in 1925 he released section seven from the deed of trust. In November 1920 Fairmont Securities Company entered into an agreement with the Lakewood Cemetery Association in which the Securities Company agreed to plat portions of the land for cemetery and burial grounds and to deed the improved roadways to the Cemetery Association. The Cemetery Association agreed to maintain the cemetery and handle the perpetual care fund. In 1924 the land was transferred from Fairmont Securities Company to Lakewood Securities Company, subject to the deed of trust.

In 1925 Mr. McDermott, the moving force behind the Securities Company and the Cemetery Association, died and Oreon E. Scott was one of the executors of his will and subsequently one of the trustees of his estate. In 1928, perhaps by reason of his relationship to the

McDermott estate, Scott was elected to the Board of Directors of the Securities Company and in 1929 was President of the company. After Mr. McDermott's death, if not before, the Securities Company became involved financially. Mr. Mayer granted the company several extensions on the notes secured by the deed of trust, but by 1929 he was insisting on payment. At that time the balance due on the indebtedness was $45,316.15. After extensive discussions at Securities Company's board meetings Scott finally agreed to take up the deed of trust and carry the obligation for thirty days provided the indebtedness was reduced to $39,830.00. To reduce the debt to the agreed sum and to pay the National City Bank $14,000.00 the Securities Company borrowed $20,000.00, secured by a second deed of trust on the property. In addition Scott endorsed the $20,000.00 note. Scott paid Mayer $39,830.00 and the notes were transferred to him. During the next four years there were no payments on the principal sum and the interest was paid for but two years. In 1933 Scott caused a successor trustee to execute the power of sale and foreclose the deed of trust. He became the purchaser, in the name of an employee-defendant-appellant Lolah F. Steed, upon a bid of $20,000.00. The trustee's deed, recorded in February of 1933, covered all the land in St. Louis County, all the land included in the "General Plan" as well as the tract of land outside the plan, except sections 2, 3, 4, 5 and 7 which Mayer had previously released from the deed of trust.

On the day of the sale Scott caused a $60,000.00 note, secured by a deed of trust on all the foreclosed property, to be executed. Subsequently that note was transferred to the United Christian Missionary Society. He also caused a $100,000.00 note, secured by a second deed of trust on the foreclosed property, to be executed and that note was transferred to the First National Bank.

Also on the day of the sale, February 18, 1933, Scott was served with a petition and summons in a cause in which the Lakewood Cemetery Association was plaintiff. The general purpose of that suit was to enjoin the foreclosure and to obtain a decree restricting the use of the property to cemetery purposes. A temporary injunction was granted upon condition that the Cemetery Association give a bond in the sum of $100.00. The bond was not given and that suit has been continued from time to time and is now on the docket in St. Louis County undisposed of.

In October 1941 the Securities Company filed a voluntary petition in bankruptcy and was adjudicated bankrupt. In the bankruptcy court, before the referee, the trustee sought, in an order to show cause, to litigate the questions involved in this suit, but the referee denied the trustee's petition and authorized "a plenary action in any court of competent jurisdiction" by the trustee and in March 1943 this action was instituted.

The trial court found that all the land contained in the "General Plan of Lakewood Cemetery," except the land south of the north boundary of First Street, had been dedicated, used and accepted as a cemetery. The court further found that Scott was not only aware of the fact of the cemetery but that he also consented to and took part in the maintenance, development and operation of the cemetery. The court also found that the First National Bank and the United Christian Missionary Society were aware of the fact at the time they became the holders of ▮▮▮ the subsequently executed notes and deeds of trust. Because a part of the land covered by the principal deed of trust was a cemetery the trial court was of the view that the power of sale in the deed of trust was void. For that reason the trial court set aside the foreclosure sale in so far as it embraced cemetery property and cancelled the notes and deeds of trust held by the bank and the Missionary Society.

The substantial questions involved in the merits of this appeal are first, whether the land was a cemetery and second, if so the legal effect of that fact upon the principal deed of trust and its power of sale and third, irrespective of whether the foreclosure was void or valid, the respective rights of all the parties to the land.

To demonstrate that all the land had been dedicated to public cemetery purposes the Securities Company and the Cemetery Association relied upon the recorded platting of the whole tract into thirty-three sections known as the "General Plan of Lakewood Park Cemetery." They relied upon the fact that in 1928 a prospectus of the cemetery was printed, distributed to lot owners and used by salesmen. The prospectus contained the plat showing the thirty-three sections, the lake and the driveways. It contained photographs of various sections of the cemetery, the interior of the chapel on section thirty-three, the administration building which was the original Benoist Mansion also on section thirty-three and the drives throughout the sections. The prospectus contained a glowing description of the physical properties and the purposes of the organization. They relied upon the fact that prospective lot purchasers were shown and relied upon the whole area as a cemetery. They relied upon the Fairmont Securities Company's agreement with the Cemetery Association as a dedication. They showed that the whole area was enclosed with a fence and attempted to prove that the whole area was maintained and improved as a cemetery. They showed that the buildings on the tract were occupied by the cemetery superintendent and officials of the company and that there had been funeral services, three or four, in the chapel.

On the other hand, the appellants relied upon the fact that sections 2, 3, 4, 5 and 7 only were actually subdivided into cemetery lots. These sections comprise about thirty acres of the entire tract and it is in these sections only that cemetery lots have been sold. They point to the fact

that in over twenty years there have been but 1700 burials in the five platted sections. Their evidence tended to show that outside these five sections the land was not maintained and improved in any manner, certainly not as a part of a cemetery. The proposed driveways had not been constructed. The western two-thirds of the tract was fenced off, had grown up in weeds and underbrush and had been rented as a pasture for years. Some of the sections had been cultivated by a tenant for years.

██ While this is but a bare outline of the evidence upon which the parties relied to establish their contrasting claims that the whole tract was or was not a cemetery it is sufficient for the purposes of this opinion. The appellants, relying upon the tests applied in cemetery tax cases and emphasizing the fact that none of the fore-closed land had at any time been sold or used for burial purposes, insist that the land embraced in the foreclosure is not a cemetery and that there is no immediate prospect or intention of its ever being devoted to cemetery purposes. Furthermore, they insist that the platting, the "General Plan," does not establish a cemetery and, in any event, does not meet the requirements of the statute with reference to the platting of cemeteries, Sec. 15261, Mo. R. S. A.

We do not think it necessary in this case—in which it is not the substantial and determinative issue—to say with finality whether the platting and filing of the "General Plan" alone was a dedication of the whole tract to cemetery purposes, nor whether there was or was not a strict, technical compliance with the statute. It is sufficient for the purposes of this case to say that the mere fact that twenty-eight of the thirty-three sections were not subdivided or platted into actual burial lots and the plat recorded (Sec. 15261, Mo. R. S. A.), as was done with the five released sections, does not prove or neces-sarily demonstrate that the twenty-eight sections are not a part of a public cemetery. Mount v. Yount (Mo. App.), 281 S. W. 119. Neither is it necessary to indicate whether there is a difference in cemetery tax exemption cases and other ██ cemetery cases. A cemetery is a place set apart for the burial or interment of the dead. 10 Am. Jur., Sec. 2, p. 487. There is no absolute rule or inflexible test by which it may be determined categorically what does or does not constitute a cemetery. If it is land the essential requirement or pre-requisite is that it "must have been 'set apart' for the burial of the dead." National Cemetery Assn. v. Benson, 344 Mo. 784, 791-792, 129 S. W. (2d) 842, 844. If the ground has been "set apart" as a place for burial it may be a cemetery even though there have been no actual interments. Jackson, Cadavers, p. 178. This is true even though "some active measures must be taken toward preparing the ground for a burial place." National Cemetery Assn. v. Benson, supra.

Assuming that the platting into thirty-three sections, the "General Plan Lakewood Park Cemetery," and the filing of the plat was not a

statutory dedication of the land to cemetery purposes and did not create a cemetery (Woodlawn Cemetery v. Everett, 118 Mass. 354), yet it does not follow that, as between these parties and in the circumstances of this case, that it was not a cemetery. That plat and its recordation certainly evinced an intention on the part of the Securities Company and its organizers to devote the entire tract to cemetery purposes, even though all of it did not immediately become a cemetery. Prior to the recording of the "General Plan," two of the sections had been platted into cemetery lots, and, admittedly set apart for purposes of burial. Subsequently three more sections were likewise set apart. One of the accepted methods by which land may be "set apart" as a cemetery is by dedication. Tracy v. Bittle, 213 Mo. 302, 112 S. W. 45; Campbell v. Kansas City, 102 Mo. 326, 13 S. W. 897. And the essence of dedication is intention, an intention to dedicate or set apart for cemetery purposes. Jackson, Cadavers, pp. 214-217; 26 C. J. S., Secs. 13-14. Other circumstances, to be considered with the platting, "active measures," manifesting an intention to set apart and dedicate this tract of land as a burial place are that the whole tract was held out to lot purchasers as a part of a cemetery. It was contemplated, as sections were sufficiently developed, that other sections would be opened in the future, subdivided into burial lots and actually devoted to .sepulcher. This was indicated by the literature used in selling lots and by the general appearance and use of the property as it was viewed by lot purchasers. There was the agreement between the Securities Company and the Cemetery Association, and the pervading purpose of perpetual care and maintenance. There was the use made of the drives and the structures on the premises. In short, in view of all the facts and circumstances and so far as the present action is concerned, the land embraced within the "General Plan," north of First Street as the court found, had been set apart as a cemetery. Close v. Glenwood Cemetery, 107 U. S. 466, 2 S. Ct. 267, 27 L. Ed. 408; Blooming Grove v. Roselawn Memorial Park Co., 231 Wis. 492, 496-497, 286 N. W. 43; Jackson, Cadavers, p. 178.

Having determined that a part of the land embraced in the deed of trust is a cemetery the question is the effect of that fact upon the power of sale contained in the deed of trust and the foreclosure under it. By way of introduction it should be noted that a power of sale in a deed of trust is a lawful provision and is a matter of contract between the parties, in Missouri. Homan v. Connett, 348 Mo. 244, 152 S. W. (2d) 1053; Adams v. Boyd, 332 Mo. 484, 490, 58 S. W. (2d) 704, 707. Not only is the exercise of the power of sale in a deed of trust one of the established alternative modes of mortgage foreclosure (Mo. R. S. A., Secs. 3447, 3450; 37 Am. Jur., Sec. 647), it is specifically authorized and recognized by statute. "All mortgages of real or personal property, or both, with powers of sale in the mortgagee, and all sales made by such mortgagee or his personal representatives,

in pursuance of the provisions of such mortgages, shall be valid and binding by the laws of this state upon the mortgagors, and all persons claiming under them, and shall forever foreclose all right and equity of redemption of the property so sold: . . ." Mo. R. S. A., Sec. 3462. Consequently, if there is a legitimate attempt to exercise the power of sale contained in the deed of trust and the mortgagee has a clear right to foreclose, the sale is not void even though the power may have been improperly exercised. (Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 706, 98 S. W. (2d) ▮▮▮ 770, 773; Loeb v. Dowling, 349 Mo. 674, 162 S. W. (2d) 875), thereby giving the mortgagor the right to redeem or avoid the effect of the sale in a proper proceeding. Pueblo Real Estate Loan & Inv. Co. v. Johnson, 342 Mo. 991, 119 S. W. (2d) 274.

▮ But in this case there is no offer by the mortgagor or the cemetery to pay the balance due on the notes and redeem the property or otherwise disaffirm the foreclosure sale. It is claimed that the power of sale contained in the deed of trust was destroyed and that the foreclosure sale was void by reason of the fact that the land embraced in the deed of trust had been set apart as a cemetery. They urge that the deed of trust could be foreclosed, and the rights of the parties protected, by a suit in equity, only. Indubitably, the usual and ordinary rules of real property law are modified once land is devoted to cemetery purposes. Jackson, Cadavers, p. 242. However, there are no common law rules which prohibit the encumbrance of cemetery property, neither, on the other hand, are there any rules which prohibit the devotion of land to cemetery purposes merely because it has been mortgaged. Jackson, Cadavers, p. 250. Our statutes do not contain any special provisions relating to the mortgaging of cemeteries nor do the statutes authorizing and recognizing powers of sale in deeds of trust contain any exceptions in the instance of mortgages on cemeteries. Mo. R. S. A., Secs. 3450, 3461. For various reasons (Jackson, Cadavers, pp. 180, 185) the setting apart of land as a cemetery tends to make it sacroscant. That concept has modified the usual rules of property law and is the thing the law seeks to protect. The only objection to mortgages on cemeteries or to their foreclosure is their tendency to divert the property from the purposes to which it was dedicated into ordinary commercial uses. Annotation 90 A. L. R. 444; Jackson, Cadavers, p. 252. Consequently, if these objections may be met and the property protected as a cemetery, as long as it remains dedicated to cemetery purposes, there can be no objection to the foreclosure of a deed of trust under its power of sale rather than by a suit in equity, unless we have definitely established some rule of law to the contrary.

The securities company and the cemetery association contend that we have heretofore held that the power of sale in a deed of trust on a cemetery is absolutely void. They contend that such a power

326

of sale and a transfer under it are void in the sense that a sale of burial ground under a general execution (specifically excepted by statute, Mo. R. S. A., Sec. 1325) is void. It is true that in United Cemeteries Co. v. Strother, 332 Mo. 971, 61 S. W. (2d) 907, 90 A. L. R. 438, the court said: "It may be conceded, therefore, that when Louis A. Harbin joined in or consented to the platting of the land on which he held a deed of trust as a cemetery, he assented to and helped create a condition which rendered void the power of sale in the deed of trust." Later in the opinion, in speaking of the effect of a cemetery, the court also said: "It may destroy the power of sale given by such deed of trust, for a sale in that manner is unrestricted and, as said in the Allison, case, supra (Allison v. Cemetery Caretaking Co., 283 Mo. 424, 223 S. W. 41) 'would cast a cloud on the rights of those whose friends and relatives are buried on said lots, or would result in diverting said property from its public use as a burying ground and converting same into a commercial asset.'" (It should be noted that when the case was here the second time it was held that the original petition failed to state a cause of action for the appointment of a receiver. United Cemeteries v. Strother, 342 Mo. 1155, 119 S. W. (2d) 762.) Furthermore, it was assumed in Ottenad v. Mt. Hope Cemetery & Mausoleum Co. (Mo. App.), 176 S. W. (2d) 62, that the power of sale in a deed of trust on a cemetery is void. In view of these two cases it is quite understandable that the trial court was of the view that the power of sale in this deed of trust was void. We think however, in the circumstances of this case, that the power of sale in this deed of trust was not void. Further, we think that what the court meant, as it plainly indicated, was that as long as the property remained dedicated to cemetery purposes it could only be transferred, whether by power of sale or other conveyance, as and for a cemetery and "was no longer subject to unrestricted sale for commercial purposes." An examination of the files in that case reveals that the principal point of divergence, while the case was in Division One, was the nature of the mortgagee's interest in cemetery property, that is whether his interest was anything more than a mere reversionary right or whether it was in fact an interest in the land. The opinion of the court en banc established that the mortgagee had an interest in the cemetery land, not a mere reversionary interest, even though that interest was not subject to ordinary commercial uses.

The Strother and Allison cases were specifically distinguished and these two latter points emphasized in Troost Avenue Cemetery v. Kansas City, 348 Mo. 561, 154 S. W. (2d) 90. There a cemetery association sought to cancel special benefit assessments levied in a condemnation suit. It was held that the cemetery, as a unit, was subject to special benefit assessments which could be enforced, subject to the rights of lot owners, by sale under special execution. Of the

Allison and Strother cases the court said, 348 Mo. 1. c. 575-576, 154 S. W. (2d) 1. c. 98:

"The Allison case held a cemetery association could legally make a voluntary sale of its cemetery to another association of the same kind and maintained for the same purpose; but that such an association could not mortgage the cemetery land to secure money borrowed for purposes other than the maintenance and improvement of the cemetery—this because a foreclosure under the power of sale contained in the mortgage would cast the title adrift in commercial channels, in violation of the uses to which the ground had been dedicated and on faith of which the dead had been buried there.

"The United Cemeteries case, decided en banc in 1933, ruled that one holding a mortgage on a tract of land who consented to the subsequent platting thereof as a public cemetery, thereby waived and forfeited his rights under the power of sale contained in his mortgage, because, in any sale of the cemetery its use and identity as such must be respected and preserved. But the case further ruled the mortgagee by consenting to such platting and dedication did not lose his lien on the cemetery land, and that the mortgage could be foreclosed in equity where all rights arising from the fact that it was a burial ground could be protected; and even that the sale could be made in a pending receivership proceeding, and the mortgagee given a preference in the disposition of the sale proceeds over general creditors.

"The theory on which the Cemetery Company has cited these cases is plain. Both decisions assume that a foreclosure sale under the power contained in a mortgage or deed of trust would convey all title in the encumbered land—or at least all title the mortgagor had when he gave the mortgage; and that this would violate the restrictions applying to land dedicated (even subsequently) to and used for cemetery purposes. The Cemetery Company here assumes the same would be true of a sale under special execution to enforce the lien of a special benefit assessment levied under Article XIII of the Kansas City Charter of 1908. But we do not think so, for the Mullins cases (Mullins v. Mount St. Mary's Cemetery, 239 Mo. 681, 144 S. W. 109; 259 Mo. 142, 168 S. W. 685; 268 Mo. 691, 187 S. W. 1169) held that such a sale would be subject to those restrictions. Indeed, the United Cemeteries case, just reviewed, concluded by holding the foreclosure sale under a deed of trust could be made through a court of equity subject to and for the protection of those paramount restrictions."

Assuming therefore, as these cases do hold, that a deed of trust on a cemetery may not be foreclosed under its power of sale but may only be foreclosed by a suit in equity, nevertheless, does it follow that if the mortgagee does foreclose under the power of sale that the foreclosure is an absolute nullity? Is not the question, when reduced to its simplest terms, merely whether, the mortgagee having misconceived or pursued the wrong remedy, the foreclosure is therefore void?

We have pointed out that the mortgage was valid and that the mortgagee had a legal right to foreclose. Consequently, there was not a wrongful foreclosure in the sense of its being unlawful but only an improper execution or enforcement of a rightful foreclosure. Loeb v. Dowling, supra. The sale was not, therefore, void in the sense it would have been had there been a foreclosure before the debt was due, or after it had been paid, or the foreclosure had been forbidden by statute. Peterson v. Kansas City Life Ins. Co., 339 Mo. 1. c. 707, 98 S. W. (2d) 1. c. 774; Long v. Long, 79 Mo. 644. At most the foreclosure sale was merely voidable or subject to disaffirmance, as we have previously indicated, in an appropriate proceeding by those seeking to avoid the effect of the foreclosure and subject, of course, to the preservation of the property as a cemetery. Pueblo Real Estate Loan & Inv. Co. v. Johnson, supra; Adams v. Boyd, supra; Homan v. Connett, supra; Peterson v. Kansas City Life Ins. Co., supra; United Cemeteries v. Strother, supra and Troost Avenue Cemetery v. Kansas City, supra.

 Also, in support of their conflicting claims, the parties urge upon us the maxims of equity and the equitable doctrines of estoppel and laches. But before these auxiliary principles of equity jurisprudence may be employed it is necessary to first consider the equities and conduct of all the parties. 30 C. J. S., Secs. 89, 98, pp. 456, 488. In this connection it should be remembered that the principal notes represented the contracted purchase price of this land and that the deed of trust securing the notes was on the land when the Securities Company acquired it and the Cemetery Association was organized and before any of the land was set apart as a cemetery or devoted to cemetery purposes. According to its schedules in bankruptcy the principal debts of the Securities Company were this obligation of $39,830.00 and two similar obligations to the Phillip McDermott Estate in the sum of $88,500.00 together with $37,000.00 interest. The Securities Company and the Cemetery Association were organized and the land was set apart as a cemetery and all future operations and conduct were with the knowledge and in the light of this indebtedness, particularly the principal notes and deed of trust. In the face of these facts the Securities Company and the Cemetery Association now claim the title to this land free of these obligations and on the sole ground that the first deed of trust was foreclosed under its power of sale rather than by the decree of a court of equity. On the other hand, Mr. Mayer, the original holder of the principal deed of trust, released thirty acres of the tract (Sections 2, 3, 4, 5 and 7) from his deed of trust and in so doing described the tracts as "Lakewood Park Cemetery." Consequently, he had some knowledge that at least a part of the land he had once owned was being dedicated to cemetery purposes. It is not even debatable but that Scott knew all there was to be known about the cemetery before he acquired the notes and deed

of trust. He not only became a director of the company and its president but he represented the McDermotts as the executor of Mr. McDermott's will and as trustee of his estate and, in addition, assisted in promoting and developing the company and the association in every conceivable manner. By 1937 Scott was indebted to the First National Bank in the sum of thousands of dollars and there were, according to the bank, arrearages in the taxes alone in the sum of $76,000.00 on the land he had pledged as security for his indebtedness. To pay the taxes the bank advanced him that sum in exchange for the $100,000.00 note and deed of trust upon which they rely in this case. At the same time Scott was also indebted to the Missionary Society for large sums, chiefly on his endorsements of notes and deeds of trust he had transferred to it. In exchange for its $60,000.00 note and deed of trust his indebtedness was credited in the sum of $25,000.00 and he was given $35,000.00 in cash. Before the bank and the Missionary Society entered into this transaction they not only inspected the property and observed its condition but the certificates of title, which they required, plainly showed the recordation of the "General Plan" and so both of them had some knowledge of the fact of a cemetery on this land. Beach v. Lynn, 299 Mo. 127, 252 S. W. 437. Notwithstanding these facts Scott, the bank and the Missionary Society now seek to obtain title to this land free and clear of any obligations with respect to a cemetery. In these circumstances the equities of the situation are that the Securities Company and the Cemetery Association, on the one hand, dealt with this property with knowledge of and in recognition of the principal note and deed of trust, while Scott, the bank and the Missionary Society, on the other hand, dealt with the principal indebtedness and the land with full knowledge and in recognition of the fact of the cemetery. Having so dealt with the subject matter of this litigation and with one another, in recognition of the principal deed of trust on the one hand and the cemetery on the other hand, the equities of the situation are that the parties are accordingly bound, on one side by a cemetery and on the other side by a deed of trust.

In trying this case anew we have ignored the printed record and considered only the original transcript of eleven hundred pages. In so doing we agree with the trial court's finding as to the Securities Company's cross-appeal. The evidence shows that the land south of First Street was not set apart for cemetery purposes and, therefore, that land should not be and is not affected by this proceeding.

The Judgment on the cross-appeal is affirmed, otherwise the cause is reversed and remanded for further proceedings consistent with this opinion.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court en Banc. All concur.