## W. C. MULLINS, Appellant, v. MOUNT ST. MARY'S CEMETERY ASSOCIATION and THE FIRST NATIONAL BANK OF KANSAS CITY.

**Division Two, June 23, 1914.**

1. **BENEFIT ASSESSMENTS: Sewer: Cemetery: Charter of Kansas City.** Under the charter of Kansas City the land of an incorporated public cemetery is chargeable with its share of the cost of constructing a district sewer.

2. **CEMETERY LOT:** Easement. The holder of a lot in a cemetery has no title to or ownership in the lot. He has a mere easement or burial right, subordinate to the ownership of the corporation or trustees owning the cemetery.

3. **BENEFIT ASSESSMENTS:** Sewer District: Cemetery: Tax Bills to Issue Against the Whole. Special tax bills to cover the cost of a district sewer are properly issued against the entire grounds of a cemetery within the district, and not against the separate lots therein.

4. ————: ————: Fraud: Knowledge of Contractor. Fraud in laying out a sewer district is no defense to the collection of the special taxes for the construction of the sewer, unless such fraud is known to the contractor who does the work.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED AND REMANDED.

*Fyke & Snider* for appellant.

The only question involved in this case is whether it was proper to issue the special tax bills against the entire tract or parcel of land belonging to the Cemetery Association, or whether separate tax bills should have been issued against each lot as platted by the respondent. Appellant contends that the tax bills were properly issued against the entire tract or parcel, and contends that the court below erred in holding otherwise and in rendering judgment for respondent. Cemetery v. Buffalo, 46 N. Y. 503; Perkins v. Lawrence, 138 Mass. 361; Kincaid's Appeal, 66 Pa. St. 411; Went v. M. P. Church,, 80 Hun, 266; Jacobs v. Children of Israel, 107 Ga. 521; Scheir v. Trinity Church, 169 Mass. 21; Gardner v. Cemetery, 20 R. I. 648; Richards v. Church, 7 How. (N. Y.) 476; Partridge v. First Church, 39 Md. 635; Rayner v. Nugent, 60 Md. 518; Dwenger v. Geary, 113 Ind. 112; Page v. Symonds, 63 N. H. 17; Gowen v. Bessey, 94 Me. 114.

*William Moore* and *McCune, Harding, Brown & Murphy* for respondents.

The tax bills in suit are void, being in violation of section 10, article 9, charter of Kansas City of 1889, which is section 7, article 8, of the charter as published in 1909. It was the duty of the Board of Public Works to apportion the cost of the sewer against all the lots of land in the sewer district. Heman Construction Co. v. Railroad, 206 Mo. 172; Mullins v. Cemetery Assn., 239 Mo. 681. The charter of Kansas City, sec. 7, art. 8, as published in 1909, provides for the apportionment of the cost of the sewer against each lot or parcel of land in the district, exclusive of streets and alleys. This section provides that "as soon as the work of constructing any district sewer shall have been completed under any contract let for the purpose, the Board of Public Works shall compute the whole cost thereof and apportion and charge the same as a special tax against the lots of land in the district, exclusive of improvements and in the proportion their respective areas bear to the area of the whole district, exclusive of streets, avenues, alleys and public highways, and shall, except as hereinafter provided, make out and certify in favor of the contractor or contractors to be paid, a special tax bill for the amount of the special tax against each lot in the district." The exception referred to in this section is found in section 14, which provides that tax bills shall not be issued against land owned by the city. This was the state of the charter when these tax bills were issued. It will be observed that the charter does not discriminate between lots used for one purpose and those used for another. In Heman Construction Co. v. Railroad, supra, the court held that the fact that the land was railroad right of way made no difference. In the case of Powers v. Grand Rapids, 98 Mich. 396, the court held that the right to assess for public improvements

does not depend upon the use to which the owner may put the lots. In Fitzgerald v. Thomas, 61 Mo. 500, the court said, "a lot means a lot of ground as bounded and described on plats or as subdivided and bounded by conveyances by the owners." State ex rel. v. St. Louis, 211 Mo. 592; Merrill v. Railway, 25 Kan. 294; Glover v. Terre Haute, 129 Ind. 593; State v. Lewis Co., 72 Minn. 87. Even if the contention of the appellant that the word "lot" as used in the charter does not mean a lot as described on a cemetery plat, were true, he could hardly go further and say that the deeds of conveyance made by the cemetery association, by which several lots so platted were conveyed as one tract to one person did not, under the decisions of our court, vest in the grantees of these deeds, title to the lots within the meaning of the charter. If there is any decision of any court to the effect that the word "lot," as used with reference to real estate, means, a lot of any particular size, we have been unable to find it. The authorities in this State are unanimous upon the proposition that where the charter of a city provides that tax bills shall be issued against each lot in a certain district, it is imperative that this should be done, and that a tax bill issued against several lots collectively in such a case, is void. This point was squarely and unequivocally decided in the case of St. Louis v. Provenchere, 92 Mo. 66. In Hannibal v. Richards, 35 Mo. App. 28, the court said: "Such a bill neither authorizes a judgment for the whole amount nor a separate amount against each lot." To the same effect are: Knoll v. Welkin, 13 Mo. App. 275; Christian v. Taussig, 8 Mo. App. 602; Cooley on Taxation (3 Ed.), p. 1267.

ROY, C.—This is a suit on a special tax bill, in which judgment went for the defendant. The petition was filed July 24, 1907, and is in two counts based on

259 Mo.—10

special tax bills for the construction of sewers. The first court is on a bill for $17,598.28, dated October 12, 1904. It is payable in four annual installments, beginning May 31, 1905. It bears seven per cent interest, with the provision that if there is default in the payment of any of the installments the whole shall become due and bear ten per cent from the date of the tax bill. The second count is on a bill for $1531.71, dated September 1, 1905, bearing interest at ten per cent per annum. Both said bills are against the land included in Mount St. Mary's Cemetery in Kansas City, containing about thirty-five acres.

The answer admits that the defendant owned the land and alleges that it holds the land as trustee for the improvement of Mount St. Mary's Cemetery, of which said land is a part, and also for certain orphan asylums of Kansas City, except such portions or lots thereof as it has sold and conveyed for burial lots. It alleges that the land described is a public cemetery, thirty-five acres in area, not connected in any way with the sewer or sewers for the construction of which said tax-bills are alleged to have been issued, and that in building said sewers there was no provision made by which drains on said land should be connected with said sewers and that said cemetery lands derive no benefit whatever from said sewers and that the tax-bills equal or exceed the total value of the land.

That for said reasons the ordinances authorizing the issuance of the tax bills in this suit are void because they are fraudulent and oppressive and that the enforcement of the tax bills in this suit would constitute a taking under the guise of taxation of the private property of the defendant for public use without any compensation and is in violation therefore of sections 20, 21 and 30 of article 2 of the Constitution of the State, and also in violation of the Fourteenth Amendment to the Constitution of the United States. There

is no allegation that the plaintiff knew of or was a party to such fraud.

It alleges that the cemetery grounds have been duly platted into lots and the plats thereof filed in the office of the recorder of deeds of Jackson county, Missouri; that many of said lots have been sold and conveyed to persons who are now the beneficial owners and that the act of the Kansas City Board of Public Works in apportioning the special taxes for the construction of said sewer against the thirty-five-acre cemetery tract as one lot was in violation of article 8, section 7 of the charter of Kansas City, Missouri.

The reply was a general denial.

A jury was waived by the parties and the trial was before the court. The plaintiff introduced the tax bills in evidence. The defendant introduced in evidence its charter and articles of association, dated December 24, 1898, also its by-laws which included the following:

"8. The board of directors shall have power to make additional by-laws from time to time for the government of this association, which are not inconsistent with the Constitution or laws of the United States or of the State of Missouri. And it shall also have power to prescribe rules and regulations from time to time governing the use and maintenance of the cemetery grounds, which shall be binding on the association and on all lot holders in said cemetery.

"9. The board of directors shall have power to see to it that the cemetery grounds and all additions and extensions thereto shall remain in a proper state of ornament and repair, and may from time to time dispose of lots in said cemetery, which shall, however, be used for no other purpose.

"The surplus funds of this association shall from time to time be used and applied to the support and relief funds needed by local Catholic orphan asylums

in Jackson county, Missouri, by and with the consent of the bishop of the Kansas City diocese.

"10.  One-third of the receipts from the sale of lots shall be set aside as a maintenance fund, and the interest thereof devoted to the perpetual care of cemetery."

Said cemetery was originally laid out in 1877 by a corporation under the same name as that of the defendant and of which the defendant seems to be merely a continuation.  Prior to such incorporation in 1898, the deeds made by the cemetery corporation to the lot holders contained the words "grant, bargain and sell" in the granting clause, and also had the following clause:

"To have and to hold the same unto the said party of the second part, his heirs and assigns only as a place of burial, subject, however, to the conditions, stipulations and regulations hereto annexed and made part of this deed, and which are the conditions upon which this deed is made," followed by a clause of general warranty.

The annexed stipulations and regulations, among other things, contained the following:  "1.  No lot shall be used for any other purpose than as a place of burial for the dead."

Prior to 1898 there were sold 850 lots by deeds of that character.  After the incorporation of defendant in 1898, purchasers of lots were not given deeds of conveyance for the lots, but they received certificates, each of which stated that the holder thereof was entitled to the exclusive use of the lot therein named for the interment of members of his family forever, subject to the by-laws, rules and regulations of the defendant.  Since the adoption of that form, certificates of that character have been issued for about 600 lots. The evidence for the defendant shows that there have been more interments in single graves than in lots.

About one-third of the area of the cemetery remains undisposed of to lot owners.

Plaintiff asked the following instruction, which was refused:

"The court declares the law to be that if the court finds from the evidence that the land described in the tax bill sued on is enclosed in one general enclosure, and the said land is under the charge and control of the defendant cemetery association, then it was legal and proper to issue the special tax bills against the same, as one tract, and the special tax bills are legal and valid as against whatever interest the said defendant has in said land, and plaintiff is entitled to a special judgment against said land, and whatever interest said defendant has therein."

The court gave the following instruction for defendant:

"1. The court, sitting as a jury, declares the law to be: That if the court finds from the evidence that a part of the tract of land described in the tax bills in evidence, at and prior to the dates when the ordinances mentioned in said tax bills were passed, was used for the purposes of a cemetery, and had, prior to said dates, been platted into cemetery lots and that a plat of said cemetery had, prior to said dates, been filed in the office of the recorder of deeds for Jackson county, Missouri, and that some of said lots had, prior to said dates, been conveyed by the defendant to other persons, and deeds therefor had been filed for record and had been recorded in the office of said recorder of deeds, prior to said dates, then said tax bills are void and the finding must be for the defendant."

There is no evidence in the case as to whether any sewer was laid in the cemetery grounds, nor as to how near such sewer is to those grounds. Neither is there any evidence as to the size or topography of the sewer district, or the relative position of the cemetery therein.

I. On the question as to whether cemetery grounds are subject to sale for the payment of special tax bills for the construction of a sewer, the opinion of this court on the former appeal (239 Mo. 681) is conclusive on the parties herein.

District
Sewer:
Cemetery.

II. In order to determine whether the tax bills were properly issued against the entire tract which constitutes the cemetery, or whether separate bills should have been issued against each lot therein, it is necessary to determine the character of the ownership of the lots by the so-called lot owners. All the deeds and certificates under which lots are held in this cemetery provide that they are held for burial purposes only.

The first case on the subject in the United States is that of the Brick Presbyterian Church, 3 Edw. Ch. 155, decided by the Chancery Court of New York in 1837. It held that purchasers of burial lots in church grounds holding by deeds of lease and release took the fee. That case was quoted in Windt v. German Reformed Church, 4 Sandf. 471. But in the latter case the lot holder did not claim under a deed, so that reference to the former case was merely obiter. Since then many cases have been decided. Some of them involved lots held under conveyances by warranty deed in fee simple. In some the lot holders had a mere certificate entitling each to bury in the specified lot. In others there was no deed or certificate. But all of them decide that the lot holder has no title to or ownership in the lot, but has a mere easement or burial right, subordinate to the ownership of the corporation or trustees owning the cemetery.

Cemetery Lot:
Easement.

In the case of the Reformed Presbyterian Church of New York, 7 How. Pr. 476, decided in 1853, it was held that deeds to lot holders containing the words,

"do sell, convey and confirm unto the party of the second part, his heirs and assigns forever, to be used for the purpose of a burial place only, that certain piece of ground," etc., were grants of the use of the lot as a place of burial in subordination to the right of the corporation in the freehold, and that the trustees had a right to sell in compliance with the statute and remove the remains of the dead, under the order of court.

The case of Went v. Methodist Protestant Church, 80 Hun, 266, involved the rights of persons holding burial lots under deeds of full warranty purporting to convey the title to the land. The court said, l. c. 271: "The question of title cannot be determined solely by the terms of the deed given to the lot owner. Reference must of course be had to the act of the legislature creating the corporation from which title is derived and to the limitations upon its power and to the manifest intent of the parties to the instrument. Every owner of a cemetery lot must be deemed to have purchased and to hold it for the sole purpose of using it as a place of burial, and, as was said in Kincaid's case, he is bound to know at his peril that it may become offensive by the residence of many people in its vicinity and that its use must yield to laws for the suppression of nuisances." See, also, Kincaid's Appeal, 66 Pa. St. 411; Perkins v. Lawrence, 138 Mass. 361; Sohier v. Trinity Church, 109 Mass. 1; Partridge v. Independent Church of Baltimore, 39 Md. 631; Richards v. Northwest Protestant Church, 32 Barb. 42; State v. Scoville, 78 Conn. 90.

The only case involving the very question now under consideration is Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 506. That was a suit to enforce the payment of a special assessment for the construction of a sidewalk. It was held that the assessment was properly made against the entire cemetery grounds. We need not add to what is said

*Taxbills to Issue Against the Whole of Cemetery.*

in those cases.  They show clearly that if the separate
cemetery lots were made the units for special tax pur-
poses, the result would be unsatisfactory to all con-
cerned.  Some lots would be sold for the tax, and thus
diverted to secular uses.  Other lots would be saved
from sale by the payment of the tax against them.  The
cemetery, instead of being one consecrated place of bur-
ial, or all devoted to business or residence purposes,
would be broken up into small fragments used for dif-
ferent and incompatible purposes, rendering the cem-
etery unfit for the repose of the dead or the activities
of the living.  It follows that the instruction asked by
the plaintiff should have been given, and that those
given for the defendant should have been refused.

III.  Fraud in laying out a sewer district is no
defense to the collection of the special taxes for the
construction of the sewer, unless such fraud is known
to the contractor who does the work.
[Jennings Heights L. & I. Co. v. City of
St. Louis, 257 Mo. 291, and the cases
there cited.]  The answer in this case
does not allege such knowledge on the part of the plain-
tiff.  The defense of fraud is not sufficiently raised by
the answer, nor is it shown by the evidence, and, there-
fore, is not in the case.

The judgment is reversed and the cause remanded.
*Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy,
C., is adopted as the opinion of the court.  All of the
judges concur.