COMMUNITY MAUSOLEUM COMPANY, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70384.   Promulgated September 10, 1935.

*Chester Bennett, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

## OPINION.

ARUNDELL: Petitioner contends that, being on the accrual basis and reporting its income on the installment basis allowed by section 44 of the Revenue Act of 1928, it is entitled to have 10 percent of the total amount of cash received in the year on crypt sales, whether made in that or previous years, either deducted as an expense in the year in which the sale is made, or included as part of the cost of the crypts sold, or excluded from its gross income altogether. Petitioner contends that it derives no advantage from this 10 percent, except possibly what might result from readier sales because of the existence of a permanent endowment fund, and has no interest in or control of this fund, which, under its agreement with the trustee bank, is impressed with a trust in favor of the crypt owners. It complains that respondent treated this 10 percent as part of the contract price, but did not add it to petitioner's cost. Respondent relies on the paragraph of the petitioner's trust agreement with the bank that was trustee and depositary of the endowment fund which provided expressly that the last installment of 10 percent paid by a purchaser on his crypt should go to the endowment fund, the earlier payments being subject to petitioner's demands. The respondent therefore allowed only the actual amounts paid in to the endowment fund in 1930 in respect to sales in that and preceding years. In doing so much, however, he has conceded in effect petitioner's contention on the point of law.

It is now settled law that a trust created to provide means for permanent care of cemetery lots or crypts in accordance with the cemetery association's contracts with lot purchasers will impress the agreed portion of the purchase price of such lots with its character and thus remove so much of the association's gross receipts from taxable income. *Los Angeles Cemetery Association*, 2 B. T. A. 495; *Greenwood Cemetery Association*, 2 B. T. A. 910; *Springdale Cemetery Association*, 3 B. T. A. 223; *Metairie Cemetery Association*,

4 B. T. A. 903; *Troost Avenue Cemetery Association*, 4 B. T. A. 1169; *Inglewood Park Cemetery Association*, 6 B. T. A. 386; *Evergreen Cemetery Association of Chicago*, 21 B. T. A. 1194; *Acacia Park Cemetery Association*, 27 B. T. A. 233; affd. 67 Fed. (2d) 700; *Portland Cremation Association* v. *Commissioner*, 31 Fed. (2d) 843; *Woodlawn Cemetery Association*, 28 B. T. A. 882. It was held in the *Portland* case, *supra*, that a covenant in the cemetery association's deed to the purchaser of space that a portion of the purchase price would be placed in a maintenance fund, without indicating any specific portion to be so used, was enough to impress the fund set aside by the cemetery association with a trust. Here the trust was express, and the trust agreement was incorporated by reference in the petitioner's contract of sale with crypt purchasers. We are of the opinion that 10 percent of the total sale price should be excluded from petitioner's gross income.

But in deciding that the 10 percent trust fund should be excluded from petitioner's gross income, we have merely cleared the way for the real question. What petitioner is seeking to know is how, in its peculiar circumstances, its income should be reported and the exclusion of the trust fund portion given effect. As stated, petitioner keeps its books on the accrual basis and reports its income on the installment basis under section 44 of the Revenue Act of 1928, set out in the margin.[1] Is it properly entitled to report its income so? Petitioner states that it would prefer to continue this installment method, but queries its application. Respondent insists that petitioner must continue the method. It must do so, of course, only if it is allowable under the statute and no distortion of income will result from the method.

Petitioner's doubt of the method arises from its conviction that burial crypts are " realty " within the meaning of section 44(b). If they are, obviously, the installment method is open to petitioner only within the limitation imposed by that section, that " the initial

---

[1] SEC. 44. INSTALLMENT BASIS.

(a) *Dealers in personal property.*—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment basis may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

(b) *Sales of realty and casual sales of personalty.*—In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 40 per centum of the selling price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term " initial payments " means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

payments do not exceed 40 per centum of the selling price." Before we go further, therefore, this question must be answered.

The respondent urges that burial crypts are personalty under the laws of Missouri, citing *Mullins* v. *Mt. St. Mary's Cemetery Association*, 259 Mo. 142; 168 S. W. 685. Petitioner urges that a conveyance in fee was made by the petitioner to the burial crypt purchasers and that the *Mullins* case is not decisive of the issue. It appears that after completion of the mausoleum the petitioner gave a warranty deed to crypt purchasers, purporting to convey a real property interest. Before that it had given a " certificate of ownership." The warranty deed was in the following terms:

\* \* \* Community Mausoleum Company. \* \* \* hereby grants and conveys to ————————, \* \* \* the following described space, \* \* \*

To HAVE AND TO HOLD the above described space unto the said ————————, and —————— heirs and assigns, forever, as a place for the interment of the remains of the human dead of the white race only, subject to the provisions and restrictions now existing or hereafter lawfully and constitutionally enacted respecting or applicable to said Community Mausoleum Company; and, subject to all the conditions and limitations, and the privileges and restrictions, specified in the rules and regulations of said Community Mausoleum Company and of the Mount Hope Realty Company, now in force or that may hereafter be adopted, not in conflict with the law; and, with the benefits and advantages arising under the Endowment Agreement for perpetual care for the said Mausoleum made between Community Mausoleum Company and Lafayette-South Side Bank & Trust Company, as Trustee; which said rules and regulations shall be reasonable and are hereby, together with said Endowment Agreement, specifically made a part of this conveyance.

All transfers and assignments of space covered by this deed may be made only with the written consent of the Grantor, and in conformity with the rules and regulations of the said grantor, now or hereafter existing with reference to said Mausoleum.

This is a question of local law. In the *Mullins* case, the Supreme Court of Missouri had before it the precise question whether it was proper to issue special tax bills against the cemetery as one tract, instead of against the separate lots, and held that it was. The cemetery association had purported to convey a fee simple estate to its several lot holders under a deed of bargain and sale, in which the *habendum* clause was very similar to that used here. The court reviewed the authorities and came to the conclusion that, notwithstanding the words of the conveyance, all that was conveyed was an easement of the right of burial. The case was later affirmed by the Supreme Court, *Mt. St. Mary's Cemetery Association* v. *Mullins*, 248 U. S. 501. Cf. *Hollywood Cemetery Association* v. *Powell*, 210 Calif. 121; 291 Pac. 397.

We conclude, therefore, that under Missouri law a cemetery association's conveyance of a burial lot does not create a fee simple estate

in realty, and, *a fortiori*, its conveyance of the right of burial in a crypt does not create such an estate. However, the right of burial being an easement, *Mt. St. Mary's Cemetery Association* v. *Mullins, supra, Roanoke Cemetery Co.* v. *Goodwin,* 101 Va. 605; 44 S. E. 769, it is an estate in land, 1 Thompson on Real Property, § 295; 19 C. J., p. 863. As such it is subject to the provisions of section 44 (b) with respect to the sales of realty.

We are now in a position to determine the proper method the petitioner should use for the reporting of its income. It appears from the evidence that a substantial part of petitioner's sales in 1929 and 1930 were made either for cash or on an installment basis, the " initial payments " under which were in excess of 40 percent within the tax-able period, as is used in section 44 (b). It seems clear, therefore, that such sales, whether in prior years or in 1930, should be reported on the accrual basis and not the installment basis, to which method the petitioner in such circumstances has no claim. Where the accrual method is employed the full amount of the contract price, less the 10 percent set aside for the perpetual care trust fund, should be reported in the year of sale.

Where the sales were made, however, on the installment plan within the 40 percent limitation of subsection (b), the installment basis of reporting may be used by the petitioner, which requires that a taxpayer using it must return as income " that proportion of the installment payments actually received in that year which the gross profit realized when payment is completed, bears to the total contract price." In ascertaining the two terms of this ratio, the gross profit and contract price, the 10 percent paid by each purchaser to the trustee for the perpetual care fund should be excluded both from the gross profit and from the contract price. While the petitioner under its contract with a crypt buyer created in the buyer a nonseparable right to the crypt and to its perpetual care, and a correlative obligation on the buyer's part to pay the full price of both rights of property, it was made clear in the contract by reference to the trust and endowment agreements that 10 percent of this total price would not go to the petitioner but to the trustee bank which held it for the crypt buyer's benefit. It does no violence to the words of the statute, " total contract price," therefore, to treat that term as including no more than 90 percent of the price which the buyer paid, by excluding the trust fund part; and it is equally obvious that the " gross profit " to petitioner could not properly include the 10 percent over which it had no actual control or ownership.

We hold, therefore, that the petitioner's income should be recomputed in accordance with the principles stated.

*Judgment will be entered under Rule 50.*