*1040 OPINION.
Moeeis:
It is the contention of the petitioner that the $100,000 endowment fund for building No. 1 which it agreed to and did set aside in trust, irrevocably, out of the gross sales price of crypts for the perpetual maintenance of its mausoleum should be excluded from its gross income from the sale of crypts.
In his argument the respondent divides the decided cases in two classes, (a) those where the corpus is created by specific payments of space holders, the ownership of which is recognized to be in and the use thereof to be for the benefit of such space holders, and (b) where the fund is general in its nature and inures to the trustor’s benefit, the trustor in this case being the petitioner. Conceding that in the first classification the fund should be excluded from gross income, he argues that the fund in the instant case is general and for the upkeep of the entire mausoleum property, and that, although incidentally benefiting the holders of burial space, the real and substantial benefit inures to the mausoleum company. He does not deny that there is a valid and subsisting trust, nor does he claim that there is a possibility that it may be invaded by the trustor as in Portland Cremation Association, 10 B. T. A. 65; reversed at 31 Fed. (2d) 843.
A great deal has been said upon this general subject in a multitude of cases handed down by this Board and by the courts, a review of *1041 which will serve no useful purpose in view of our recent decision in Community Mausoleum Co., 33 B. T. A. 19, in which we said:
It is now settled law that a trust created to provide means for permanent care of cemetery lots or crypts in accordance with the cemetery association’s contracts with lot purchasers will impress the agreed portion of the purchase price of such lots with its character and thus remove so much of the association’s gross receipts from taxable income. Los Angeles Cemetery Association, 2 B. T. A. 495; Greenwood Cemetery Association, 2 B. T. A. 910; Springdale Cemetery Association, 3 B. T. A. 223; Metairie Cemetery Association, 4 B. T. A. 903; Troost Avenue Cemetery Association, 4 B. T. A. 1169; Inglewood Park Cemetery Association, 6 B. T. A. 386; Evergreen Cemetery Association of Chicago, 21 B. T. A. 1194; Acacia Park Cemetery Association, 27 B. T. A. 233; affd., 67 Fed. (2d) 700; Portland Cremation Association v. Commissioner, 31 Fed. (2d) 843; Woodlawn Cemetery Association, 28 B. T. A. 882.
Finding in that case that there was an express trust and that the trust agreement was incorporated by reference into the petitioner’s contract with crypt purchasers, we held that 10 percent of the total sales price so set aside should be excluded from the petitioner’s gross income. Here the proper percentage has been agreed upon.
As we see it there could be no clearer adherence to the rule expressed in Community Mausoleum Co., supra, than in the present case. Not only did the petitioner represent orally that an endowment fund would be established, but such was made a binding condition in the contract entered into with purchasers, wherein it ivas agreed that the purchase price paid by them would include a permanent endowment fund for perpetual maintenance of the mausoleum, and this fact was highly publicized in printed literature used as a sales medium. The petitioner entered into a binding and admittedly irrevocable trust indenture at the very outset with County Trust Co., pursuant to the plan held out to its purchasers, providing for the retention by that company of a fund of $100,000 out of payments made directly to it, to be held in a special fund, known as “Ferncliff Cemetery Mausoleum Endowment Fund”, and by it invested in securities, also to be retained by it, the income therefrom to be paid to the petitioner upon the submission of vouchers to the Trust Co. for its approval. This agreement has been faithfully adhered to. Up until the time payments aggregating $100.000 had been made to the fund, under said agreement, that amount was carried on the books of the petitioner as a liability to bo satisfied out of each installment received.
Finding that a trust fund was actually established, it seems to us that it makes no difference that an incidental or indirect benefit inures to the petitioner generally, i. e., because the income may be used, for instance, to pay the wages of employees who are engaged in the general upkeep and maintenance of all crypts alike. Even where a *1042 fund is set aside in cemetery cases for the perpetual care and maintenance of a particular lot, that fund may be, and is, used to pay employees and keepers who are engaged in the maintenance of the entire cemetery. There is no conceivable case, except where separate endowments are established for separate and distinct lots or crypts, where the fund could be administered in the strict manner urged by the respondent: And, even under those circumstances, such an endowment might conceivably operate in the case of a cemetery lot, but not in the case of a crypt, which, after all, is merely a small sealed compartment or space in the walls of the mausoleum. Furthermore, •the mere fact that the petitioner maintains some proprietary interest in the mausoleum building does not necessarily mean that the benefit inures to it because, from a very practical standpoint, there is nothing for it to own or from which it can derive any pecuniary benefit after all of the crypts have been sold.
We are of the opinion that the facts of this case fall squarely within the rule of Community Mausoleum Co., supra, and that therefore the stipulated percentage of the amount of sales for the taxable year should be excluded from gross income.

tJudgment will be entered, u/nder Bule 50.