TROOST AVENUE CEMETERY COMPANY, a Corporation, Appellant, v. KANSAS CITY, LOWENTHAL SECURITIES COMPANY, JAMES L. WILLIAMS as Sheriff of Jackson County, and RICHARD J. LOEWENTHAL.

TROOST AVENUE CEMETERY COMPANY, a Corporation, v. KANSAS CITY, LOEWENTHAL SECURITIES COMPANY, JAMES L. WILLIAMS as Sheriff of Jackson County, and RICHARD J. LOEWENTHAL (Williams, sheriff, not appealing), Appellants.—154 S. W. (2d) 90.

Court en Banc, September 25, 1941.

*Henry L. Jost* and *Henry L. Jost, Jr.,* for Troost Avenue Cemetery Company.

*William E. Kemp, J. J. Cosgrove* and *Benj. M. Powers* for Kansas City; *Clarence S. Palmer* for Loewenthal Securities Company and Richard J. Loewenthal.

564

ELLISON, J.—Throughout this opinion we abbreviate the names of the parties, but a glance at the caption now will make the designations obvious. Both sides appeal from a decree in an equity suit originally brought by the Cemetery Company in June, 1938, to cancel pro tanto two special benefit assessments totaling $8000 and a former special judgment establishing the same over eleven years earlier, in May, 1927, under Art. XIII of the Kansas City Charter of 1908, then in force, against twenty-eight acres of land in Forest Hill Cemetery in Kansas City, said acreage having been included in a special benefit district ordained in financing the cost of condemning right-of-way for a park boulevard. The equity suit also sought a proportionate abatement from said assessments for 61.36% of said twenty-eight acres, already conveyed by recorded deeds to private owners for grave lots, and for 23% of said acreage occupied by roads and paths serving said graves, thereby leaving only a little over 15% not appropriated directly or indirectly to actual sepulchral uses; and offered to pay the latter percentage of said assessments less a credit for $800 already paid.

And though no injunction bond was given (Sec. 1671, R. S. 1939, Sec. 1507, Mo. Stat. Ann., p. 1663), the bill in the equity suit further prayed a temporary and perpetual injunction against an impending sale of the twenty-eight acres under special execution to satisfy said special assessment judgment; also that the title be quieted to such part of said land as should be adjudged exempt from said special assessments, execution and judgment. The defendant Securities Company was the owner of the park fund certificates issued and sold by the City representing said special benefit assessments against the Cemetery Company.

The Cemetery Company brought the equity suit for itself and in behalf of the grantees of said grave lots. It had appeared and defended in the prior special benefit assessment proceedings, but an appeal taken by other landowners represented by other counsel was dismissed and the judgment became final on May 21, 1927. The grave lot owners were not named as parties in said proceedings, nor were their several lots individually described. Hence the Cemetery Company claims said proceedings were null and void as to it and also as to them, so far as concerned said grave lots and appurtenant land; and that in no event could said land be sold at special execution under said judgment. This latter contention also was

founded on alleged public policy with respect to land used for interments, as declared by our decisions, and on the further theory that where such public policy applied, Sec. 26, Art. VIII of the Kansas City Charter required the judgment to be personal against the owner of the land assessed and to be enforced only by a *general* execution against his property. The bill also invoked Secs. 8 and 30, Art. II and Sec. 6, Art. X, Constitution of Missouri, and Sec. 10, Art. I and the Fourteenth Amendment, Constitution of the United States.

The City by answer affirmed the validity of said prior special assessment proceedings against the whole twenty-eight acres and the impending sale thereof under the special execution based on said proceedings. Its contention was that the grave lot owners had only *easements* in the Cemetery tract; and that they were not necessary parties to the former proceedings. Further the City's answer invoked the doctrine of res judicata against the Cemetery Company's equity suit as a collateral attack on the former special assessment and condemnation proceedings; and set up an equitable counterclaim praying that if the court should determine the twenty-eight acres could not be sold under said special execution to enforce the lien of said benefit assessments, then the court ascertain the amount due thereunder and enforce said lien in equity.

No restraining order or temporary injunction having been issued, the sheriff proceeded to sell the twenty-eight acres under the special execution on July 7, 1938, and the respondent-appellant Richard J. Loewenthal was the purchaser. Thereafter, on April 24, 1939, the Cemetery Company filed a supplemental bill reciting the fact of said execution sale; alleging that same cast a cloud on its title to the twenty-eight acres; and praying that said sale be set aside and for damages. The next day the Cemetery Company filed a reply to the City's answer, averring that since the defendants had rejected its offer to do equity by paying its allocable part of said special benefit judgment, therefore it invoked the ten-year Statute of Limitations (Sec. 1038, R. S. ▆▆ 1939, Sec. 886, Mo. Stat. Ann., p. 1168) against said special benefit assessments, judgment, park fund certificates and execution. This was on the theory that said special execution proceedings were wholly void, and that since more than ten years had elapsed, it was too late to obtain a general execution under Sec. 26, Art. VIII of the Charter.

The trial court decreed that the special assessments and judgment in the former special benefit and condemnation proceedings, as to the twenty-eight acres of Cemetery land, were *general* judgments, to be enforced at law as such under the provisions of the Kansas City Charter; and that defendants at all times since said assessments and judgment became final, had had an adequate remedy at law for enforcement and collection thereof by a ''proper'' execution. On that theory the decree dismissed the City's equitable counterclaim.

The decree further ruled that ''cemetery lands set apart for and devoted to public burials and which are actually occupied by graves, together with such lands as are so necessarily incident thereto that they cannot be appropriated and taken without a disturbance of the graves themselves'' cannot be sold at forced sale under execution or any judicial process, because public policy and Sec. 26, Art. VIII of the Kansas City Charter forbid it. On that ground the decree set aside the aforesaid July 7, 1938, execution sale of the twenty-eight acres and declared the defendant Loewenthal's purchase thereat null and void. On this appeal the City and the other defendants complain chiefly of the rulings summarized in this and the last paragraph.

Continuing, however, the decree held said special assessments and former judgment imposed a legal lien under the Kansas City Charter against such portion of the twenty-eight acres of cemetery land in said benefit district as had not been sold for grave lots, and that such parts of the twenty-eight acres ''as were not actually occupied by graves and not necessarily used in connection with and as a part of such graves, were and *are* subject to levy and sale under a *proper* execution issuing in said condemnation case . . .; and that any *other* of plaintiff's property, real and personal, . . . are subject to levy and sale to satisfy said execution'' (italics ours)—except its cemetery land *outside* the benefit district which was similarly used for graves. The decree did not specify further what was meant by the term ''proper executions;'' but obviously its theory was that Sec. 26, Art. VIII of the Charter applied, and that a general execution should have been issued and levied on the cemetery land other than occupied grave lots.

But, while further granting the Cemetery Company a perpetual injunction restraining the defendants from levying execution upon any part of the cemetery land previously sold to private owners for grave lots and actually occupied by graves, or land necessarily appurtenant thereto, nevertheless the decree disallowed the Cemetery Company's contention that it was liable only for such proportion of said $8000 special assessment as represented the part of said twenty-eight acres not so used. On the contrary the decree ruled the Cemetery Company was liable for the full amount of said assessments (less the $800 credit) to be satisfied, however, only out of *all* its personal and real property not so used for graves.

The Cemetery Company was a private corporation operating for profit. There were 160 acres of land in the whole cemetery and it had been used for public burials for about fifty years. Nearly 45% of it had been sold for graves when the special assessments were levied. Most of these grave lots were actually occupied by graves. Of the twenty-eight acres included in the benefit district 61.36% was so occupied, and these graves were distributed pretty generally over the acreage. Finally the decree rejected the Cemetery Com-

pany's plea of the ten-year Statute of Limitations. On this appeal the Cemetery Company complains chiefly of the rulings summarized in this and the last two preceding paragraphs.

A few further facts must be stated before proceeding to a discussion of the law of the case. The form of deed used by the Cemetery Company in conveying grave lots to grantees is shown in the margin.* ▇ It will be seen the deed uses the words grant, bargain and sell, which under our statute (Sec. 3407, R. S. 1939, Sec. 3020, Mo. Stat. Ann., p. 1867), for many years have imported a conveyance in fee simple unless expressly restrained by other language in the instrument. But the words here are immediately and expressly restrained by the following phrase, "subject to the conditions hereinafter named." Then the deed enumerates four sweeping conditions or limitations. About the only unrestricted right left to the grantees is to bury their dead on the lots and to share in the benefits of a trust fund for maintenance.

Reference should be made also to the nature of the proceedings by which the special benefits were assessed in this case and to the difference between them and other forms of assessment proceedings where,

---

* "FOREST HILL CEMETERY Established A D. 1888
"These Presents Bear Witness, That Troost Avenue Cemetery Company, a corporation, party of the first part, in consideration of the sum of _____ Dollars, of which _____ Dollars is in payment of the land hereinafter described and _____ Dollars has been paid in to the Perpetual Maintenance Fund of FOREST HILL CEMETERY, to it paid by _____ _____ part___ of the second part, the receipt of which is hereby acknowledged, Grants, Bargains and Sells unto said part___ of the second part, subject to conditions hereinafter named, the following described real estate situate in the County of Jackson, State of Missouri, namely:

"in FOREST HILL CEMETERY, as shown by the plat thereof, now on file in the office of the Recorder of Deeds of said Jackson County, in Kansas City.

"To Have and to Hold said premises unto said part___ of the second part, _____ heirs and assigns forever upon these conditions, to-wit:

"1. Said lot shall be used for the sole purpose of interring bodies of persons of the Caucasian race, and not otherwise.

"2. No fence, fencing, railing, hedge or other form of demarcation shall ever at any time be placed on or around said lot.

"3. Every monument, marker, ornament, embellishment or improvement on said lot shall be placed only with the consent of said Cemetery Company; shall be subject to the by-laws, rules and regulations of said corporation now in force or hereafter adopted; and shall be placed under the supervision of the superintendent or other officers in charge of the cemetery at the time.

"4. The Troost Avenue Cemetery Company reserves to itself and its successors the exclusive right to do all cemetery work on said lot, except the building of vaults and monuments; to put in all foundations; to inter and disinter all bodies; to plant, prune, and remove all trees, shrubs, plants and flowers; and to perform all duties in the case and special care of said property, subject to the general scale of charges and fees in force at the time when the work is done, which shall in all cases be reasonable.

"In Witness Whereof, The grantor has caused these presents to be signed by its President, attested by its Secretary, and its corporate seal to be hereto affixed this _____ day of _____ A. D."

speaking generally, public construction work was done, as in laying paving, sidewalks, building sewers and the like. This latter class of public work was covered (we speak generally), by Article VIII of the Charter, entitled "Public Improvements," and was initiated by the Board of Public Works. Usually, but not always, the benefits were assessed only against land abutting the improvement. But there was this distinction: since contracts for such work were let at unit prices (evidently) and the cost could not be ascertained until the work had been completed, there were no initial court proceedings and the benefit assessments were not made *in advance,* but were levied afterward by an apportionment of the cost among the various parcels of land according to the front foot, area or valuation rules, and "special tax bills" were issued in evidence thereof. If they were in default, the holder was compelled to sue on them, and thus the property owner had his day in court. [Mudd v. Wehmeyer, 323 Mo. 704, 711, 19 S. W. (2d) 891, 895(6).]

But as already stated, the assessment proceedings under scrutiny here, were based on Article XIII of the Charter, entitled "Department of Parks and Boulevards." This Article authorized the acquisition of real estate for boulevards by condemnation, and the payment therefor by special assessments on land in a benefit district established by ordinance. The limits of the benefit district were prescribed in the exercise of legislative power, but by Sections 10 to 18 of the Article, the assessment of compensation and damages for property taken or damaged, and of special benefits to property neither taken nor damaged, was referred *in the beginning* to the judicial power, which was exercised in the circuit court before a jury of six freeholders and confirmed by the judgment of the court. Unless the total benefits assessed equaled or exceeded the compensation and damages, the boulevard improvement could not be made. Sec. 18 of the Article allowed any aggrieved party to take an appeal as in civil cases.

Under Sec. 21 the ordinance could make the benefit assessments payable in annual installments, and therefore Sec. 24 authorized the issuance and sale by the City, after said judgment had become final, of "park fund certificates" evidencing said assessments, so the improvement could go forward. Sections 17, 21 and 22 were explicit that the process for enforcement of the judgment validating said assessments should be a *special* execution conforming so far as practicable to those on ordinary judgments foreclosing liens on real estate. No suit on the park fund certificates was necessary. Apparently they operated as assignments pro tanto of the judgment, without recourse on the City except as to funds collected on the assessments. Without question the ordinance and the proceedings thereon in this case followed Article XIII of the Charter. And the judgment of the circuit court confirming the assessments plainly was *special* in form. It charged the several benefit assessments on the

respective parcels of land to which they were applicable, and directed that they be enforced by *special* execution.

The principal question on this appeal is whether the 1927 judgment in the special benefit assessment proceedings was a final adjudication of the Cemetery Company's liability for the entire $8000 assessment, so that the doctrine of res judicata applies and the instant equity suit constitutes a collateral attack thereon. That question in turn depends on whether the court had *jurisdiction* to render the judgment; for mere error therein will not avail the Cemetery Company now. [Lovitt v. Russell, 138 Mo. 474, 482, 40 S. W. 123, 125.] We permitted the defendant school district in State ex rel. Kansas City v. School District of Kansas City, 333 Mo. 288, 62 S. W. (2d) 813, an original mandamus proceeding, to attack a former judgment against it confirming a special benefit assessment. But that was because the circuit court there lacked jurisdiction to make the assessment, since its power under the Charter extended only to *private* property, whereas the land of the school district was *public* property.

In this instance the circuit court, by express sanction of Sec. 10, Art. XIII of the Kansas City Charter of 1908 had jurisdiction of the subject matter—that is, the condemnation of land for boulevards and the assessment of special benefits to pay for the same. The adoption of the Charter was authorized by Sec. 16, Art. IX of the State Constitution of 1875; and its provisions had the force and effect of local statutes so far as not in conflict with the Constitution and State laws. [McGhee v. Walsh, 249 Mo. 266, 280, 155 S. W. 445, 448.] The fact that the charter provisions with reference to condemnation procedure departed from the general Code of Civil Procedure, did not invalidate them. [Kansas City v. Marsh Oil Co., 140 Mo. 458, 472, 41 S. W. 943, 947.] Also it must be conceded the circuit court had jurisdiction of the Cemetery Company as a party, because it had entered its appearance and participated as a defendant in the special assessment proceeding.

So the only question remaining is whether the circuit court had jurisdiction to render the particular judgment it did render in the assessment proceeding. [State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 708, 123 S. W. (2d) 20, 23(5).] In other words, did it have jurisdiction to render a *special* judgment, enforceable by *special* execution, for the whole $8000 special benefit assessment (less the $800 credit), against the Cemetery Company as the *owner* of the entire twenty-eight acres of cemetery land in the benefit district, when 61.36% of that acreage had already been sold off in grave lots most of which were occupied by graves scattered pretty well over the area, and an additional percentage was in roads and paths serving said graves, the owners of said grave lots not being named in the special assessment proceedings and their lots not being described?

Laying to one side for a minute the inquiry whether the *form* of

the judgment and/or execution should have been special or general, we think the rest of the question must be answered in the affirmative —that is to say, we think the law is well established in this and other states that cemeteries operated for profit, and parts thereof, are subject to special benefit assessments, and that the assessments should be levied against the land as a whole, *subject* to the rights of grave lot owners, rather than solely against scattered spaces not occupied by graves and necessary appurtenances. Section 6, Art. X of the State Constitution, exempting cemeteries from taxation, has no application to the question because it refers to general property taxes, not to special benefit assessments. Also, it has been held, as we shall see, that Sec. 1325, R. S. 1939, Sec. 1161, Mo. Stat. Ann., p. 1424, exempting burial grounds from attachment and execution, does not apply to special executions enforcing special assessments.

Likewise Sec. 15266, R. S. 1939, Sec. 14057, Mo. Stat. Ann., p. 816, exempts public or private burial grounds from execution sale, dower and compulsory partition, but by proviso expressly disclaims any intent "to exempt any such burial ground or cemetery property from being liable for special assessments for street improvements" levied by any incorporated city in the State. This proviso was added to the former statute by Laws Mo. 1907, p. 86, and was in force when the Kansas City Charter of 1908 was adopted. It was also in force as Sec. 1086, R. S. 1919, when the special assessment proceedings involved here were prosecuted in 1925, 1926 and 1927.

But without reference to this latter statute nearly all the questions suggested in the last three paragraphs were decided in one or another of the three appeals in Mullins v. Mount Saint Mary's Cemetery Association, 239 Mo. 681, 144 S. W. 109; Id., 259 Mo. 142, 168 S. W. 685; Id., 268 Mo. 691, 187 S. W. 1169; and Mt. St. Mary's Cemetery v. Mullins, 248 U. S. 501, 63 L. Ed. 383, 39 Sup. Ct. 173. Since these cases are stressed by the City and distinguished or challenged by the Cemetery Company, we state their facts rather fully, and have gone to the record on file here in the case reported in 239 Mo. for some of the facts.

A sewer district, No. 218, had previously been established in Kansas City, which included the whole cemetery of the defendant Cemetery Association. There were about thirty-five acres of land in the cemetery, throughout which grave lots had been sold and used for interments, except in about ten acres on one side. The Common Council passed an ordinance for the construction of a district sewer in the district to be paid for by special benefit assessments under Sec. 10, Art. IX of the Charter of 1889. That section was substantially like Sec. 7, Art. VIII of the Charter of 1908, involved here; and provided the whole cost of constructing the sewer should be charged as a special tax against the lots of land in the district, exclusive of improvements, the same to be apportioned under the area rule. Also Sec. 14 of said Art. IX of the Charter made the City

personally liable for its share of the costs as to any land owned or held by it. In one respect the facts in the Mullins cases differed from those here, because the apportionment in this case was on the basis of benefits *judicially* predetermined as a question of fact, whereas in the Mullins cases the benefits were subsequently computed under a fixed area rule legislatively established. This difference favors the Cemetery Company, as we shall presently show.

At any rate, after the sewer was completed and the cost of construction ascertained, two special tax bills were issued to the contractor against the *whole thirty-five-acre cemetery* for its proportion of the cost, one for $17,598.28 and one for $1531.71. The contractor brought suit on the tax bills against the Cemetery Association. The petition was in four counts. The first two counts severally stated straight, unqualified causes of action on the two tax bills, respectively. The third and fourth counts also were based on the same two tax bills, but they included additional allegations that the aforesaid ten acres had not been used for burials, whereas the remaining twenty-five acres had been and divers and sundry lots sold therefrom for that purpose, from which the Cemetery Association had received $100,000, then in its treasury.

These counts further alleged the Cemetery Association claimed none of the thirty-five acres was subject to execution sale, on account of the exemption provisions of Sec. 3160, R. S. 1899 (Sec. 1325, R. S. 1939, Sec. 1161, Mo. Stat. Ann., p. 1424, supra), and therefore prayed that if the court should hold exempt from sale under special execution the twenty-five acres used for burials, then the ten acres not so used be ordered sold, and that out of the funds derived from the previous sale of grave lots in the other part, the balance due on said tax bills be satisfied, a receiver be appointed if necessary, and for general relief. The briefs show the relief sought in these two counts was grounded, at least in part, on the theory that during the pendency of the litigation the 1908 Charter of Kansas City had gone into effect, and that Sec. 26, Art. VIII thereof (Sec. 319 of the present 1928 Charter) afforded a new and additional remedy for the enforcement of the special assessments. As already stated the Cemetery Company invokes the same section in the instant case. We shall return to this question later.

Now, on these facts this court held in the first Mullins case, 239 Mo. 681, 144 S. W. 109, that the *whole* cemetery was charged with the lien of the special tax bills, and that Sec. 6, Art. X of the State Constitution, exempting cemeteries from taxation did not apply because it referred only to general taxes. The opinion further ruled that Sec. 2181, R. S. 1909 (now Sec. 1325, R. S. 1939, Sec. 1161, Mo. Stat. Ann., p. 1424, supra), exempting all burial grounds from attachment and execution, had no application to *special* executions enforcing benefit assessments. Having reached this conclusion the

opinion wound up: "Other questions have been discussed in the briefs of counsel which, in the view we have taken of the case, we do not deem necessary to decide." The ruling of the lower court sustaining a general demurrer to the whole petition was held erroneous because of the rejection of the *first two counts* thereof (which stated straight actions on the tax bills), and the cause was reversed and remanded. This obviously was done on the theory that since the whole cemetery was charged with the lien of the tax bills, there was no need for discussion of the plaintiff's counts for alternative relief in case the land used for burials could not be sold.

When the case went back to the Jackson County Circuit Court recovery on the tax bills was denied, and the second appeal followed, reported in 259 Mo. 142, 168 S. W. 685. Remembering the two tax bills were both issued against the whole thirty-five-acre cemetery tract, the trial court's theory in ruling against the plaintiff was made apparent from the fact that it *refused* a declaration of law requested by the plaintiff, to the effect that if the land described in the tax bills was enclosed in one general enclosure under the charge and control of the Cemetery Association, it was proper to issue the tax bills against the whole tract; and from the further fact that it *gave* a declaration of law for the defendant Cemetery Association that if part of the tract was used for the purposes of a cemetery, and had been platted into cemetery lots by a duly recorded plat, and that some of the lots had been sold to other persons by duly recorded deeds, the finding must be for the defendant. The issue between the parties, as shown by the briefs, had been whether separate tax bills should have been issued against each grave lot sold, instead of issuing the two tax bills against the entire cemetery tract.

This court reversed the judgment of the trial court and remanded the cause, holding the grave lot owners by their deeds received no title to or ownership in the lots, but acquired only "a mere easement or burial right, subordinate to the ownership of the corporation or trustees owning the cemetery." The opinion quotes parts of the deeds used by the Cemetery Association in that case. They contained the words "grant, bargain and sell," and after the habendum appeared the following reservation: "subject . . . to the conditions, stipulations and regulations hereto annexed and made a part of this deed . . ." Only the first condition is set out in the opinion. It forbade the use of the lot for any purpose other than as a place of burial for the dead. The deed form in the instant case was at least as restrictive as that used in this Mullins case; and the doctrine of the latter is supported by the weight of authority, though some decisions assert the interest conveyed by such a deed is more than a mere easement or license. [11 C. J., sec. 23, p. 60; 14 C. J. S., sec. 25, p. 84; 10 Am. Jur., sec. 22, p. 503.]

On the third trial in the circuit court the plaintiff contractor re-

covered on the two tax bills and the defendant Cemetery Association appealed, contending the cemetery land as a matter of law had received no special benefits from the construction of the sewer. This court in 268 Mo. 691, 187 S. W. 169, held there was a presumption in favor of the reasonableness of the ordinance providing for the construction of the sewer by special assessments, and that it had not been overcome by the evidence as a matter of law. The opinion also declared the rights of the Cemetery Association were not violated because the Charter failed to make provision for notice to it of the proceedings culminating in the issuance of the tax bills. [See Mudd v. Wehmeyer, supra, 323 Mo. l. c. 711, 19 S. W. (2d) l. c. 895(6).] It further ruled that the rights of the Association under the Fourteenth Amendment to the Constitution of the United States were not infringed by enforcing the whole amount of the tax bills against the entire thirty-five-acre cemetery, and computing the assessments on that area although it included the part sold off in grave lots.

The Cemetery Association took the case to the United States Supreme Court by writ of error, where the judgment of this court was unanimously affirmed in Mt. Saint Mary's Cemetery Association, 248 U. S. 501, supra. On the question here under investigation the opinion said: "The Supreme Court of Missouri held that the fee in the title to the burial lots, which had been sold or leased, was still in the Association, with an easement of the right of burial in the lot purchasers. We see no deprivation of due process of law in this holding, making the ownership of the Association the subject of assessment. The right of burial, which was all that the lot purchasers or lessees acquired, for obvious reasons could not be put upon the market and sold to pay assessments. The Association had a title which the court held might be and was the subject of assessment."

As we read them, these Mullins cases clearly hold that under Sec. 10, Art. IX, of the Kansas City Charter of 1889, the whole of the public cemetery tract was subject to special benefit assessments as a single unit although it had been platted into cemetery lots, roads, paths and the like, and a very substantial part of the lots were tenanted by the dead. But the judgment on such special assessments was a special judgment enforceable only by *special* execution (except as otherwise provided by Sec. 14, Art. IX with reference to land owned by the City). However, the lien encumbered only the title of the owner of the cemetery tract, and was *subject* to the easement or license rights of the owners of grave lots sold, which could not be prejudiced by the execution sale. This would permit the sale of lots even though they were platted if they were unused and still belonged to the owner of the cemetery. But it would protect the owners of grave lots sold even though they were not yet occupied by graves. The doctrine of the Mullins cases is in line with the weight of authority.

[Hollywood Cemetery Assn. v. Powell, 210 Cal. 121, 291 Pac. 397, 71 A. L. R. 310, 322, Annotation.]

In its brief the Cemetery Company attempts to distinguish these Mullins cases by asserting their rulings were based on the fact that a separate, contiguous ten-acre part of Mount St. Mary's Cemetery was unsold and not occupied by graves; and that only that part was to be sold under execution. The brief quotes the opinion in 239 Mo. l. c. 692, 144 S. W. l. c. 111, as saying: "It is not shown that any part of the land ordered sold has been actually used for burial purposes." This evidently was an oversight. The opinion did not state that as a fact in the case there under adjudication. The sentence appeared in a quotation from an Illinois case. All four of the Mullins cases clearly show the whole thirty-five-acre cemetery tract was held chargeable with the special benefit sewer assessment, although there had been numerous burials in about five-sevenths of it—twenty-five of the thirty-five acres. And as pointed out several paragraphs back this court in the case in 239 Mo. declined to consider the plaintiff's counts for alternative relief by a separate sale of the ten acres and sequestration of funds to satisfy the balance of the assessment.

The Cemetery Company further stresses in its brief two cases decided by this court: Allison v. Cemetery Caretaking Co., 283 Mo. 424, 223 S. W. 41; and United Cemeteries Co. v. Strother, 332 Mo. 971, 61 S. W. (2d) 907, 90 A. L. R. 438. The Allison case held a cemetery association could legally make a voluntary sale of its cemetery to another association of the same kind and maintained for the same purpose; but that such an association could not mortgage the cemetery land to secure money borrowed for purposes other than the mainte-nance and improvement of the cemetery—this because a foreclosure under the power of sale contained in the mortgage would cast the title adrift in commercial channels, in violation of the uses to which the ground had been dedicated and on faith of which the dead had been buried there.

The United Cemeteries case, decided en banc in 1933, ruled that one holding a mortgage on a tract of land who consented to the sub-sequent platting thereof as a public cemetery, thereby waived and forfeited his rights under the power of sale contained in his mort-gage, because, in any sale of the cemetery its use and identity as such must be respected and preserved. But the case further ruled the mortgagee by consenting to such platting and dedication did not lose his *lien* on the cemetery land, and that the mortgage could be foreclosed in equity where all rights arising from the fact that it was a burial ground could be protected; and even that the sale could be made in a pending receivership proceeding, and the mortgagee given a preference in the disposition of the sale proceeds over general creditors.

The theory on which the Cemetery Company has cited these

cases is plain. Both decisions assume that a foreclosure sale under the power contained in a mortgage or deed of trust would convey *all* title in ▮▮ the encumbered land—or at least all title the mortgagor had when he gave the mortgage; and that this would violate the restrictions applying to land dedicated (even subsequently) to and used for cemetery purposes. The Cemetery Company here assumes the same would be true of a sale under special execution to enforce the lien of a special benefit assessment levied under Article XIII of the Kansas City Charter of 1908. But we do not think so, for the Mullins cases held that such a sale would be *subject* to those restrictions. Indeed, the United Cemeteries case, *just reviewed, concluded* by holding the foreclosure sale under a deed of trust could be made through a court of equity subject to and for the protection of those paramount restrictions. So, to sum up on this point, we think and hold the circuit court in this case had jurisdiction to render a judgment charging the whole $8000 special benefit assessment against the twenty-eight acres as the property of the Cemetery Company (less the $800 credit) without naming the grave lot owners or describing their lots in the proceeding.

▮▮ We turn now to the *form* of the judgment. Did the court have jurisdiction to render a judgment special in form and to direct that it be enforced by special execution? Sec. 15, Art. XIII of the Charter of 1908 provided that in a special assessment proceeding of the instant character the jury of freeholders should estimate "the amount of benefit to the city at large, inclusive of any benefit to the property of the city," and also "the value of the benefit of the proposed improvement to each and every lot, piece and parcel of private property" in the benefit district. If the total estimated benefits equaled or exceeded the compensation and damages awarded, then the estimated benefits to the city were to be assessed against it and the balance of the cost was to be prorated and assessed against the several pieces of private property in proportion to the estimated benefits. Section 17 provided the judgment should order that the City pay the benefits assessed against it, thereby making them a personal obligation, except that under Sec. 19 the City could repeal the ordinance. The assessments against the private property were to be enforced by special execution.

But no special provision was made for collecting benefit assessments against any property, other than the City's which could not be sold at execution sale. The Cemetery Company contended at the trial, as it does here, that this omission in the provisions of Art. XIII of the 1908 Charter was bridged by the second paragraph of Sec. 26, Art. VIII of the Charter, which was exactly the same as Sec. 319, Art. VIII of the present 1928 Charter, except for a clause added .at the end of the latter. We quote the paragraph. The italics and parenthesis are ours.

"*Whenever* any land *liable*. to be assessed with special benefits *to pay for any public improvement mentioned in this charter* shall be owned by a railroad corporation, cemetery association, county, school district, or any other public or quasi-public corporation, or by any other corporation, association, society or person as trustee, such land *shall be assessed* and *a special tax bill issued* to evidence the same *in the same manner as though the same were the property of a private person*; and *if a sale of such land to enforce such assessment is contrary to the public policy or the laws of this state* then the amount of such assessment, as may be evidenced by the special tax bill, shall be paid by such railroad corporation, cemetery association (etc., *ubi* supra). *Suits shall be instituted* to enforce the collection of any such special tax bills in the same manner and in the same courts as on other special tax bills, and the judgment in any such suit, if for the plaintiff, *shall be a personal one against the owner* of the land assessed, for the amount due on such tax bill; but no such judgment shall be rendered in any such suit for an amount greater than the value of the land so assessed; and the defendant or defendants in any such suit may, by appropriate pleading, raise the issue of the value of the land so assessed; and when that issue is raised the judgment, if any, shall be enforced as other judgments against the judgment debtor; but no such land shall be sold under such judgments; . . ."

The learned chancellor below thought the paragraph just quoted applied to the special benefit assessments in this case and made them enforceable by *general* execution, as the decree discloses; and the Cemetery Company vigorously maintains that view here. The question is difficult, but we have reached a contrary conclusion. As we pointed out in State ex rel. Kansas City ˌv. School District of Kansas City, supra, 333 Mo. l. c. 297(2), 62 S. W. (2d) ▮ l. c. 816 (2, 3), the quoted part of the section starts out with an adverbial clause saying, *whenever* any land is *liable* to assessment for any public improvement mentioned in the Charter. We expressed the view in the School District case, and still think, this means *if* the land is subject to such special assessments. And it is a fact that cemeteries of the class here involved were liable for such assessments under Art. XIII of the Charter. So far this makes Sec. 26, Art. VIII, quoted above, applicable.

But the section goes on. It says that *if* the land is liable to special assessment, it shall be assessed and a special tax bill issued *in the same manner* as if it were owned by a private person. That means, we think, that the land shall be assessed and a special tax bill issued in whatever form and manner is prescribed in the particular proceeding for special assessments against a private person. In a boulevard condemnation and special assessment proceeding under Art. XIII the assessment would be made by a jury and confirmed by the court under

Secs. 15 and 17, and the tax bill would be in the form of park fund certificates under Sec. 24. Then Sec. 26, Art. VIII continues by annexing another condition, which is that *if* the sale of such land to enforce the special assessment would be contrary to public policy and the laws of this State, then the amount of such assessment, as evidenced by the tax bill (in this case the park fund certificates) shall be paid by the railroad, cemetery association, etc. From there on (and obviously only in case of default) the section authorizes a suit on the "tax bill" and the recovery of a personal judgment, not in excess of the value of the land.

But that does not mean such suits must be brought if the land *is* subject to execution sale on the previous assessment. The language of the section is necessarily broad because it contemplates every kind of special assessment mentioned in the Charter, and therefore every kind of proceeding prescribed to enforce such assessments. Also it enumerates landowners some of whom are not liable to special assessment, like counties and public school districts, and some that are, like railroads although segments of their right-of-way cannot be sold at special execution. [Heman Construction Co. v. Wabash Rd. Co., 206 Mo. 172, 104 S. W. 67, 121 Am. St. Rep. 649, 12 L. R. A. (N. S.) 112.]

When the section uses the word "tax bill" it must use it in a broad and generic sense, meaning the bill for the tax, in other words, the paper evidencing or assigning the assessment or judgment thereon in whatever form the Charter requires. This would include the park fund certificates authorized by Art. XIII. And when it provides for a suit on the "tax bill" and the recovery of a personal judgment, it must refer to a special assessment which cannot be collected by execution and not to one already established by the judgment of a court. The provisions of this Article differ from those formerly prevailing in St. Louis, and reviewed in St. Louis v. Brinckwirth, 204 Mo. 280, 289, 293, 102 S. W. 1091, 1093, 1094, where special assessments were collected by suit or as provided by ordinance; because Art. XIII made the judgment confirming the assessments final, and authorized special execution to enforce them. [See Schwab v. City of St. Louis, 310 Mo. 116, 133, 274 S. W. 1058, 1063.]

We think the four Mullins cases, supra, are controlling here, and that the twenty-eight acres of Forest Hill Cemetery included in the benefit district created by Ordinance 50,695, were subject to sale under special execution for the $8000 in special assessments (less the $800 credit); and that the latter part of Sec. 26, Art. VIII of the 1908 Charter had no application. It is true that the grave lots and appurtenances were not subject to sale, but they were not covered by the execution. Only the underlying fee·of the Cemetery Company was assessed. And we do not see how it could well be otherwise. If the Cemetery land was subject to assessment at all (and it was) it

would have been a case of "confusion worse confounded" if the spaces around and between the scattered graves and appurtenances had been sold to a separate ownership, the fee underlying the grave lots and appurtenant land had been left in the Cemetery Company, and the dominant grave lot interests were owned by divers others. This is what was held, in effect, in United Cemeteries Co. v. Strother, supra, 332 Mo. l. c. 978(8), 61 S. W. (2d) l. c. 910(8), 90 A. L. R. 438.

A sale of the twenty-eight acres *subject* to the grave lot rights is more favorable to the Cemetery Company than if all its free property were liable to general execution. And an assessment of benefits under the *area* rule against the whole twenty-eight-acre Cemetery ▉▉▉ tract including the grave spaces and appurtenances, as was done in the Mullins cases, would have been harsher than the assessment by a jury of *actual* benefits only to the subordinate fee of the Cemetery Company, as was done in this case. The jury could take into consideration the fact that the interests of grave lot owners were not subjected to the assessment, and adjust the benefit assessment accordingly. The park fund certificates were sold on the faith of the benefit judgment. The purchaser at the execution sale is charged with notice of the title he was getting. We think the benefit assessment is res judicata. We therefore reverse the decree of the chancellor setting aside the special execution sale held on July 7, 1938, and confirm the title of the purchaser, Richard J. Loewenthal, subject, however, to the purposes for which the cemetery was dedicated, and grave lot rights including all necessary appurtenances such as avenues, drives, and walks. [See National Cemetery Assn. v. Benson, 344 Mo. 784, 785, 791(2), 129 S. W. (2d) 842, 845(4).]

▉ The agreed statement of facts mentions a certain trust fund for the maintenance of the cemetery. If and insofar as there be any trust agreement charged in part on the twenty-eight acres for the production of revenue for said fund, or if the twenty-eight acres is entitled to maintenance out of said fund, these rights cannot be disturbed by the execution sale. The opinion is expressed in the United Cemeteries case, supra, 332 Mo. l. c. 971(9), 61 S. W. (2d) l. c. 910(9), 90 A. L. R. 438, that in a judicial sale of cemetery land the court cannot impose on the purchaser the duty to make improvements and provide for its future care and maintenance. But where a trust exists looking to those ends, we understand grave and cemetery rights under the trust are not extinguished by an involuntary sale of the land subject thereto. [10 Am. Jur., sec. 10, p. 493, sec. 22, p. 504.] We need not pass on the Cemetery Company's contentions with respect to the Statute of Limitations since we have held the special execution sale was valid.

▉ The judgment is reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed. This being an equity case, and the adversary parties having

both obtained substantial relief by this appeal, the costs are apportioned one-half to each. [Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S. W. (2d) 332, 339 (22).]

PER CURIAM:—The foregoing opinion by ELLISON, J., in Division Two, is adopted as the opinion of the court en banc. All concur.